STATE OF NEW JERSEY, DEPARTMENT OF ENVIRON-
MENTAL PROTECTION, PLAINTIFF-RESPONDENT, v.
MIDLAND GLASS COMPANY, INC., A CORPORATION OF
THE STATE OF DELAWARE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 18, 1976—Decided November 17, 1976.

Before Judges BISCHOFF, MORGAN and COLLESTER.

*Mr. Francis X. Journick* argued the cause for appellant (*Messrs. Wilentz, Goldman & Spitzer,* attorneys; *Messrs. Frank M. Ciuffani and Marvin J. Brauth* on the brief).

*Mr. Peter Herzberg,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,*

Assistant Attorney General, of counsel; Mr. Thomas P. Weidner, Deputy Attorney General, on the brief).

PER CURIAM. In this appeal from an order granting partial summary judgment[1] in favor of plaintiff, Department of Environmental Protection (Department), we are required to consider and resolve a narrow issue concerning the construction and applicability of *N. J. S. A.* 26:2C-9.2(a) and (c) containing the permit and certificate requirements of the Air Pollution Control Act, *N. J. S. A.* 26:2C-1 *et seq.*, which requirements became effective on June 15, 1967. *N. J. S. A.* 26:2C-9.2(a) and (c), together with its immediate statutory context, provides:

(a) No person shall construct, install or alter any equipment or control apparatus, in other than a one or 2-family dwelling or a dwelling of 6 or less family units one of which is owner-occupied, until an application including plans and specifications has been filed with the department and an installation or alteration permit issued by the department, in accordance with any codes, rules and regulations of the department except that subject to any such codes, rules and regulations the department may dispense with the filing of applications, plans and specifications. Information relating to secret processes or methods of manufacture or production is exempted from the plans and specifications and other pertinent information to which the department is entitled under this section.

(b) No person shall use or cause to be used any such new or altered equipment or control apparatus for which an installation or alteration permit is required or issued until an operating certificate has been issued by the department.

(c) No operating certificate or renewal thereof, required by this act, shall be issued by the department unless the applicant shows to the satisfaction of the department that the equipment is designed to operate without causing a violation of any provision of this act or of any codes, rules and regulations promulgated thereunder and that, except in the case of a renewal certificate, the equipment incorporates

---

[1]The remaining unresolved issues upon which summary judgment was denied were settled by the parties and a consent judgment reflecting the terms and conditions of that settlement was executed and filed, preserving the issue to be considered herein for appeal. Hence, the order appealed from is not interlocutory and no leave to appeal was sought or granted; the appeal is of right.

advances in the art of air pollution control developed for the kind and amount of air contaminant emitted by the applicant's equipment.

\* \* \* \* \* \* \* \*

The term "equipment" is defined in pertinent part in *N. J. S. A.* 26:2C–2 as follows:

"Equipment" means any device capable of causing the emission of an air contaminant into the open air \* \* \*.

Summarizing the impact of *N. J. S. A.* 26:2C–9.2(a) as it pertains to the present case, it forbids any "alteration" of "equipment" (that is, equipment associated with a manufacturing process capable of polluting the air) in the absence of a permit to do so, and this without apparent regard as to whether the alteration will increase the amount of contaminants emitted. The same provision, however, empowers the Department to adopt a regulation dispensing with this permit requirement whenever the Department deems it advisable to do so. *Id.*

The Department took such action in promulgating *N. J. A. C.* 7:27–8.3(i) which provides:

The provisions of subsections (a) and (b) of this Section [which generally parallel *N. J. S. A.* 26:2C–9.2(a) and (b)] shall not apply to structural changes, repairs or maintenance, if such changes, or repairs or maintenance will not change the quality, nature or quantity of the air contaminant emitted.

Hence, the combined effect of *N. J. S. A.* 26:2C–9.2 and *N. J. A. C.* 7:27–8.3(i) is to require an application for a permit to be filed before an alteration to equipment is made except when the alteration is in the nature of a structural change which will not increase the amount of contaminants emitted. A violation of this, or any other provision of the Air Pollution Control Act or any regulation adopted pursuant thereto, exposes the violator not only to injunctive relief forcing compliance but to liability for substantial monetary penalties as well. See *N. J. S. A.* 26:2C–19. Indeed, the

order for partial summary judgment appealed from did make provision for such penalties, although the amount thereof was finally settled by the parties and is not before us.

Defendant-appellant Midland Glass Company manufactures glass containers for use in the beverage industry in a plant located in Cliffwood, Matawan Township. Four glass melting furnaces form an essential part of this manufacturing process. These furnaces, and more particularly furnaces 1 and 4, were originally constructed in 1966 before the effective date of the permit and certificate requirements of the Air Pollution Control Act, June 15, 1967, and were acquired by Midland, with the entire plant, in 1968. Although the furnaces have been maintained and repaired over the years, the four original glass melting furnaces still exist and are in operation today.

These furnaces were originally designed and constructed with the capability of using alternative energy sources, natural gas, fuel oil and electricity. Natural gas, however, has for years been the normal type of energy utilized, although furnace 3 was originally equipped to utilize electric power. With the advent of natural gas shortages and the increased cost thereof, Midland has sought to resort to both fuel oil and more recently to electrical power as an alternative energy source. Mechanically, the use of electricity appears to involve the insertion of electrodes into the material being melted within the furnace proper.

It was in 1973 that Midland desired to provide furnaces 1 and 4 with the alternative of using electric power as a supplemental energy source and, accordingly, application for a permit to install the appropriate equipment was made on April 23, 1973. The application was rejected by letter dated May 23, 1973 on the ground that "the equipment covered by the application [did] not incorporate 'advances in the art of air pollution control developed for the kind and amount of air contaminants emitted' by your equipment." Although the letter itself did not specify the "advances in the art of air pollution control" required by the Department

as a condition to the issuance of a permit, during oral argument of this appeal defendant gave clear indication of its knowledge of the requirement — which appeared to be costly equipment, the effectiveness of which was disputed by defendant. At any rate, no appeal, administrative or otherwise, was taken from this rejection of the application and the appropriateness of the requirement for incorporation of advances in the art is not before us.

Notwithstanding the rejection of its application, defendant undertook to electrify furnaces 1 and 4 and the Department became aware of this fact during an investigation on September 11, 1973. On September 28, 1973 the Department issued an order requiring defendant to obtain valid installation permits and operating certificates for this equipment on or before October 15, 1973. Note must be taken that the order did not require defendant to cease using the furnaces under electric power, and that which it did require defendant to do, defendant had already done (apply for permits), albeit without success. Defendant's appeal from this order was not timely, the Department declined to consider the appeal on this ground, and on appeal the Department was affirmed on the ground that the appeal was out of time. See *Midland Glass Co. v. Dept. of Environ. Protection, N. J., 136 N. J. Super.* 194, 200 (App. Div. 1975), request for certification dismissed as moot, 70 *N. J.* 152 (1976).

Defendant continued using the furnaces with the electrical heating devices; indeed it was never ordered to stop from doing so. Apparently the only outstanding order was to make application for permits for the boosters and this it had already done.

Finally, the Department filed the present action in the Superior Court on October 1, 1974 in which it sought broad injunctive relief against defendant's continued operation of the electrified furnaces for which permits or certificates had not been obtained, an order requiring defendant to obtain the necessary permits and, in addition, sought the monetary

penalties provided for in *N. J. S. A.* 26:2C–19. Defendant took the position before the trial court, and again before us, that although it originally sought to obtain the permits, it was not required by *N. J. S. A.* 26:2C–9.2(a) as modified by *N. J. A. C.* 7:27–8.3(i) to do so.

Defendant predicates its position on four separate but related propositions: (1) the furnaces were originally designed before the effective date of the permit and certificate requirements of the Air Pollution Control Act for the use of electrical heating devices, and consequently the mere implementation of this original design capability cannot be considered an alteration to equipment occurring after the effective date of the Act. (2) Since the electrical heating devices have no effect on the quality, nature or quantity of emissions from the furnaces, they are exempt from the permit and certificate requirements. (3) The Department is precluded from enforcing the permit and certificate requirements against defendant because at the time of the initiation of the present controversy no valid testing procedures to measure compliance with *N. J. A. C.* 7:27–6.2(a) (emission standards) had been published. A prior order of the Superior Court, in a companion case between the same parties, precluded the Department from enforcing compliance because of its failure to publish those procedures. (4) The Department should not be permitted to compel compliance with the permit and certificate requirements before the constitutional validity of *N. J. A. C.* 7:27–6.1 challenged by defendant in its counterclaim, is disposed of.

The trial judge entered an order of partial summary judgment in favor of plaintiff, dismissed defendant's counterclaim seeking adjudication of the constitutional validity of the permit and certificate requirements as applied to defendant on the ground that it lacked jurisdiction to pass upon the question, made provision for the assessment of monetary penalties for defendant's violation of the Air Pollution Control Act and the implementing regulations, and

ordered defendant to make application for the necessary permits and certificates for the electrical boosting equipment.

██ We affirm. Defendant's initial contention that the permit and certificate requirements of *N. J. S. A.* 26:2C–9.2 (a) do not apply to equipment designed before the effective date of the Act to accommodate alterations thereto, even where the new equipment is added or the alterations are actually made after the effective date of the act, is without merit. No such qualification to the requirements of the provision is apparent from the language used; no unexpressed legislative intent derived from the apparent purpose of the provision can be discerned. The purpose of these permit and certificate requirements was to afford the Department knowledge of all changes, whether by way of new equipment or alteration of existing equipment, capable of exacerbating air pollution before such potential is realized so as to permit more adequate controls. The exemption of existing equipment, apparent from the face of the provision, should not, therefore, be extended by legislatively unsupported implication, to the installation of new equipment or other alteration of existing equipment after the effective date of the Act. To do so would be to enlarge, to a presently undeterminable extent, the sharply limited exemption from these requirements given to equipment existing on the effective date of the act.

██ ██ Similarly without merit is defendant's contention that the electrical heating devices are exempt from the permit and certificate requirements because their installation on furnaces 1 and 4 does not increase or otherwise affect the level of contaminants emitted therefrom. In support of this contention, defendant refers to *N. J. A. C.* 7:27–8.3(i) quoted above, which exempts from the permit and certificate requirements all structural changes not affecting the quality, nature or quantity of the air contaminant emitted. Defendant does not contend that the electrical heating devices in issue are structural changes and does not therefore contend

that this regulation has direct application. It does, however, argue that the polluting effect of a new installation should be determinative of the requirement to obtain permits and certificates. Defendant argues with the logic of exempting, by regulation, structural changes not having a deleterious polluting effect on the atmosphere and denying exemption to other alterations also lacking such an effect. Although the contention has surface appeal, it in no way disposes of the issue before us because the electrical heating devices themselves are, and were found by the trial judge to be, new equipment and hence subject to the provisions of *N. J. S. A.* 26:2C–9.2(a) without regard to the exempting regulation referred to. (*N. J. A. C.* 7:27–8.3(i)). Ample support for the trial judge's finding in this regard is defendant's own admissions, contained in its original application for a permit for these devices submitted on April 23, 1973, identifying the devices as "New Process Equipment with Possible Lower Emission Potential." Moreover, apart from these admissions and the trial judge's supported finding with respect to this fact, it is apparent from the record that the new electrodes and associated equipment do constitute new equipment as that term is defined in the act. The fact that the equipment as installed also constitutes an alteration to existing equipment (the furnaces) in no way detracts from its status as new equipment and as such is expressly made subject to the permit and certificate requirements imposed by *N. J. S. A.* 26:2C–9.2(a), regardless of any changes in the level of contaminants wrought thereby.

Defendant apparently is asking this court to create an exception to the permit and certificate requirements of the Act, exempting from such requirements all new equipment and alterations to existing equipment not shown to cause increased emissions into the air. This we cannot and will not do. The term "equipment" is defined in the act as "any device capable of causing the emission of an air contaminant into the open air," and hence whenever used in the act carries

with it implications for possible polluting effect. The Legislature could well have concluded, and probably did conclude, that adequate administrative control over air pollution in this State required intervention before installation or alteration of all equipment carrying even the potential for polluting the atmosphere;[2] by such means pollution could be avoided rather than remedied. We see no warrant to undermine this method of control.

Defendant next argues that it was excused from compliance with the permit and certificate requirements of *N. J. S. A.* 26:2C–9.2(a) and (c) because a previous order of the Chancery court precluded departmental enforcement of emission standards set forth in *N. J. A. C.* 7:27–6.2(a) until publication of testing procedures by which compliance with that regulation could be measured. Defendant argues that since the testing procedures were not published at the time the present suit was instituted, and since defendant was thereby unable to demonstrate compliance with the act or any of the rules and regulations promulgated thereunder, a necessary condition to the granting of a certificate, it was absolved from the necessity of applying for one. This contention, too, is without merit.

The Department may decline to issue an operating certificate on either one of two grounds, or on both. First, it may refuse a certificate unless the applicant shows to the satisfaction of the Department that the equipment is designed to operate without causing a violation of any provision of the act, or of its implementing rules and regulations. Clearly, under the prior order relied upon by defendant, the Department could not have refused defendant a permit for failure to comply with emission standards measured by pro-

2Permits and certificates are not required where equipment yields less than a stated amount of contaminants emitted, depending upon the nature of the process being used. See, *e. g.*, *N. J. A. C.* 7:27–8.2 (a)(2), (3), (4) and (7). Neither defendant nor the State has referred to these regulations and they do not appear to be germane.

cedures not yet published. It could, and did however, refuse the certificate on the second ground, that the equipment failed to incorporate advances in the art of air pollution control developed for the kind and amount of air contaminant emitted by the equipment. *N. J. S. A.* 26:2C–9.2(c). The fact that the Department could not enforce against appellant one of the conditions for issuance of a certificate provides no reason to foreclose it from insisting that other conditions to its issuance be met. Moreover, defendant's argument in this regard, has since become moot with the recent promulgation of testing procedures. 8 *N. J. Regis.* 223(a), June 21, 1976. The regulation cures the defect which precluded enforcement of emission standards against defendant. Determination of a controversy by an appellate court must be made in accordance with law in effect at the time of decision and not at the time the proceeding was commenced. *In re Petition of South Lakewood Water Co.,* 61 *N. J.* 230, 248 (1972); *S. & L. Ass'n, Inc. v. Washington Tp.,* 35 *N. J.* 224, 227 (1961); *Little Ferry v. Bergen Cty. Sewer Auth.,* 9 *N. J.* 536, 547 (1952), *cert.* den. 344 *U. S.* 865, 73 *S. Ct.* 105, 97 *L. Ed.* 670 (1952). With publication of the standards, no obstacle any longer exists to the enforcement of *N. J. S. A.* 26:2C–9.2(c) as against defendant. Although the subsequent adoption of the testing procedures would not have validated imposition of monetary penalties for violation of emission standards not measurable at the time by published procedures, monetary penalties were not imposed therefor and, at any rate, the appropriateness and amount of penalties have been settled by the parties and that issue is not before us.

■ Finally, defendant contends that the Department "should not be permitted to compel compliance with the permit and certificate requirements before the question of the constitutional validity of *N. J. A. C.* 7:27–6.1 *et seq.,* raised in Midland's counterclaims, is disposed of." This contention lacks any real substance. Midland has already complied with the trial court order requiring applications to be made for

permits. Indeed, it sought permits earlier, in 1973. In the constitutional issue raised, Midland is not concerned with the provision upon which rejection of its application was based, but rather with a regulation governing emissions not relied upon by the Department in rejecting defendant's application. We, therefore, see no reason to delay defendant's compliance with the permit and certificate requirements until the asserted question concerning the constitutionality of a regulation not affecting the rejection of its application is disposed of.

Defendant is, however, free to pursue the matter, but in the Appellate Division where it properly belongs. See *R.* 2:2–3(a)(2). Accordingly, the dismissal of the counterclaim will be vacated and the appeal transferred to the Appellate Division. *R.* 1:13–4(a). Defendant's contentions with respect to the trial court's dismissal of affirmative defenses need no longer concern us; the merits of those affirmative defenses, in the interest of expediting this matter, have been considered by us in this appeal.

Affirmed.