575 A.2d 895

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTEC-
TION, PLAINTIFF–RESPONDENT, v. ATLANTIC STATES
CAST IRON PIPE COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 23, 1990—Decided June 19, 1990.

Before Judges SHEBELL, BAIME and KEEFE.

*David Sweet* argued the cause for appellant (*Collier, Jacob & Sweet*, attorneys; *David Sweet* and *Alan G. Lesnewich*, on the brief).

*Michael S. Caro*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, attorney; *Paul H. Schneider*, Deputy Attorney General, of counsel; *Michael S. Caro*, on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

This appeal involves a dispute between defendant Atlantic States Cast Iron Pipe Company (Atlantic States) and plaintiff Department of Environmental Protection (DEP) as to whether a certificate issued by DEP to Atlantic States on August 4, 1989, entitled "PERMIT TO CONSTRUCT, INSTALL OR ALTER CONTROL APPARATUS OR EQUIPMENT," may be revoked, or its renewal denied by DEP without an adjudicatory administrative hearing pursuant to the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–11. DEP argues that the permit is no more than a temporary operating certificate, valid for 90 days, issued for the purpose of pre-license testing of Atlantic States' air pollution control equipment under *N.J.S.A.* 26:2C–9.2(c)(3) and is not a license for which there is a right to renewal. Therefore, DEP contends that Atlantic States has no right to an administrative hearing upon the running-out of its temporary operating certificate, or upon the DEP's decision not to renew the certificate for an additional 90 days.

Defendant Atlantic States, a Delaware corporation wholly-owned by McWane Inc., operates a foundry in a residential area of Phillipsburg. The foundry has been in operation for approximately 150 years and currently employs 300 people. Atlantic

States is primarily engaged in the business of manufacturing iron pipes by melting down raw materials. According to DEP, "plant ownership has changed several times and as a result of DEP and United States Environmental Protection Agency enforcement actions, the plant has been altered several times.... Thus the plant does not enjoy grandfathered status under APCA [Air Pollution Control Act]."

As part of its production process the defendant is required to use several pollution control devices. Exhaust gases are filtered through several of these devices such as afterburners and scrubbers, and are then discharged through smokestacks into the surrounding atmosphere. As described by DEP, these pollution control devices are part of three separately approved systems which:

> include a scrap iron cupola with afterburners, wet scrubber and smoke stack which operates pursuant to permit and certificate number 074039; a pretreatment ladle, small baghouse (fabric filter) and baghouse vent which operates pursuant to permit and certificate number 66840; and a ductile ladle and large baghouse which operates pursuant to permit and certificate number 66839.

It is permit and certificate number 074039 which is the subject of this current dispute. Since about 1986, the DEP has permitted the operation of a new cupola which melts down scrap iron, steel and silicon carbide. A temporary-conditional certificate was issued and according to the agency's own statement, "[o]ver the next ... three years, the Department regularly extended Atlantic States' cupola temporary certificate in 90–day increments...." Each permit stated that it was temporary and was "BEING EXTENDED TO ALLOW FOR FURTHER FIELD/OFFICE EVALUATION."

The DEP was initially satisfied with the operation of the new cupola and the reduction in fugitive emissions, but it claims by "April, 1986, fugitive emissions and odors began again." According to DEP, this problem became progressively worse, resulting in DEP and defendant negotiating over certain modifications in the manufacturing process that could be made in order to mitigate the problem.

Defendant made several changes in its production process attempting to bring its plant into compliance with DEP regulations and orders. The defendant installed a device known as a pretreatment ladle which received molten iron from the cupola. Once in the ladle, the molten iron was treated with calcium carbide which removed sulfur from the molten iron. This design change was approved by DEP, and it issued a permit and certificate allowing operation using the modified process. However, in September 1987, DEP issued an administrative order revoking the permit that allowed defendant to operate using the modified procedure claiming that the pretreatment ladle had serious "fugitive emissions" problems. According to DEP, during 1987 and 1988, it issued defendant four administrative orders and notices of civil administrative penalties for operating beyond the scope of its permits.

On July 11, 1989, the DEP filed a civil enforcement complaint pursuant to the Air Pollution Control Act (APCA), *N.J.S.A.* 26:2C–1, *et seq.*, in the Chancery Division, Warren County, charging Atlantic States with violating the APCA and with noncompliance with permit requirements under which its air pollution control systems were operating. The complaint sought to restrain Atlantic States from operating until the DEP was satisfied that Atlantic States was in compliance with all statutory and regulatory requirements. In addition, DEP requested the payment of maximum civil enforcement penalties. The chancery judge did not impose temporary or permanent restraints on Atlantic States after being assured defendant would immediately remedy the situation. The judge then transferred the matter to the Law Division so that DEP's claim for civil penalties could be litigated.

On August 10, 1989, Atlantic States received a 90–day permit pursuant to *N.J.S.A.* 26:2C–9.2, denominated a "conditional-temporary" certificate, which contained a variety of special conditions. The permit listed Atlantic States' cupola scrubber stack as the equipment to be constructed, installed or altered subject to the permit. In particular, the permit contained as a special

condition that "[t]here shall be no fugitive emissions from any of the equipment, including the cupola enclosure, described in the Application and approved by this Permit." Additionally, the permit required that defendant submit a stack testing protocol "[w]ithin 45 calendar days of the effective date of the Permit ..." and that within 180 days after installment of the new equipment it be tested.

On August 18, 1989, Atlantic States sent a letter to DEP objecting to several conditions of the permit, including the zero fugitive emissions condition. Defendant requested an immediate stay of the objectionable conditions and a hearing pursuant to the APCA and the APA, *N.J.S.A.* 52:14B-1, *et seq.* Despite defendant's request, no hearing has yet been scheduled.

On November 2, 1989, defendant received a letter from DEP notifying it that its temporary permit was not being renewed as Atlantic States allegedly was "not operating equipment without causing a violation of the [APCA] ... or the rules promulgated thereunder." Defendant responded to DEP's notice not to renew its permit by telecopied letter requesting a hearing under the APA. Defendant's letter stated "that N.J.S.A. 52:14B-11 provides that you may not refuse to renew any permit or license unless we first have an administrative hearing."

On November 3, 1989, defendant moved in the Law Division, Warren County, for an order restraining the DEP from taking any enforcement actions against Atlantic States for operating without a permit. Enforcement actions were still pending in that court against Atlantic States stemming from earlier incidents; but nonetheless, the court extended Atlantic States temporary operating permit and certificate for 30 days.

The parties then negotiated over the terms for continuance of the temporary operating certificate. DEP asserts that a stack protocol was submitted by Atlantic States, but was deficient. In any event, the parties came to an agreement concerning stack testing and continuance of Atlantic States' temporary permit beyond the 30-day extension of time granted by the Law

Division. On January 16, 1990, the court signed a consent order that required defendant to perform "stack emission tests according to the approved protocol by January 17, 1990...." The temporary permit was again extended to allow testing to take place and so defendant could respond to any adverse comments plaintiff made regarding test observations or results. This order effectively extended defendant's temporary permit to February 15, 1990.

The stack emission tests were conducted on January 16 through January 19, and on January 22 and 23, 1990. On February 1, 1990, defendant was notified that due to violations of the APCA observed during stack testing DEP determined that the Temporary Certificate to Operate should not be renewed as "the Department is not satisfied that Atlantic States has shown that its control equipment is designed to operate without causing a violation of any provision of the Act or the regulations promulgated pursuant thereto." Defendant denies the violations cited by DEP as reasons for termination of the temporary permit.

On February 2, 1990, Atlantic States moved in the Law Division for an order to show cause why DEP should not be required to provide an adjudicatory hearing pursuant to the APA, *N.J.S.A.* 52:14B–11, and requested that DEP be restrained from taking any enforcement action. The court ordered a hearing on the issue of whether defendant was entitled to an administrative hearing before DEP could revoke or deny renewal of its temporary operating certificate, but denied defendant's request for an order restraining the DEP from taking any enforcement action against defendant.

On February 5, 1990, the Law Division heard arguments and thereafter entered an order denying defendant's request for an administrative hearing prior to DEP's denial of a renewal of Atlantic States' temporary operating certificate. However, the court extended defendant's temporary operating certificate until February 15, 1990.

On February 14, 1990, we granted defendant's application for leave to appeal. We ordered that Atlantic States' temporary certificate remain in effect until the appeal was decided or "entry of a final decision in plaintiff's favor following a contested case hearing...." We provided, however, that the DEP was permitted to apply for a dissolution of the court's stay upon a showing that the continued operation of the plant was harmful to the public health and safety. No application for dissolution has been made to the present time.

The question presented is whether the temporary operating certificate issued to Atlantic States as continuously renewed thereafter constitutes a license in which Atlantic States has a property interest, thereby entitling it to an administrative hearing prior to its nonrenewal. The APA, *N.J.S.A.* 52:14B–11, provides:

> No agency shall revoke or refuse to renew any license unless it has first afforded the licensee an opportunity for hearing in conformity with the provisions of this act applicable to contested cases. If a licensee has, in accordance with law and agency rules, made timely and sufficient application for a renewal, his license shall not expire until his application has been finally determined by the agency. Any agency that has authority to suspend a license without first holding a hearing shall promptly upon exercising such authority afford the licensee an opportunity for hearing in conformity with the provisions of this act.
>
> This section shall not apply (1) where a statute provides that an agency is not required to grant a hearing in regard to revocation, suspension or refusal to renew a license, as the case may be; or (2) where the agency is required by any law to revoke, suspend or refuse to renew a license, as the case may be, without exercising any discretion in the matter, on the basis of a judgment of a court of competent jurisdiction; or (3) where the suspension or refusal to renew is based solely upon failure of the licensee to maintain insurance coverage as required by any law or regulation.

We do not consider any of the enumerated exceptions found in *N.J.S.A.* 52:14B–11 applicable to this case.

The DEP is authorized to control and approve all licensing required in order to comply with the APCA, *N.J.S.A.* 26:2C–1 *et seq. See N.J.S.A.* 26:2C–8 and 26:2C–9, *N.J.S.A.* 13:1D–7. In order to ensure that proper air pollution control equipment is installed, operated, maintained and updated the DEP has authority to grant or deny operating certificates to those engaged

in businesses that might produce air pollution. *See N.J.S.A.* 26:2C–9.2; *State, Dept. Env. Pro. v. Midland Glass Co.,* 145 *N.J.Super.* 108, 116, 366 *A.*2d 1343 (App.Div.1976), certif. den., 73 *N.J.* 65, 372 *A.*2d 330 (1977).

Specifically, *N.J.S.A.* 26:2C–9.2(c) establishes:

No operating certificate or renewal thereof, required by this act, shall be issued by the department unless the applicant shows to the satisfaction of the department that the equipment is designed to operate without causing a violation of any provision of this act or of any codes, rules and regulations promulgated thereunder and that, except in the case of a renewal certificate, the equipment incorporates advances in the art of air pollution control developed for the kind and amount of air contaminant emitted by the applicant's equipment.

(1) Before an operating certificate or any renewal thereof is issued, the department may require the applicant to conduct such tests as are necessary in the opinion of the department to determine the kind or amount of the air contaminant emitted from the equipment or whether the equipment or fuel or the operation of the equipment is in violation of any of the provisions of this act or of any codes, rules and regulations promulgated thereunder. Such tests shall be made at the expense of the applicant and shall be conducted in a manner approved by the department and the test results shall be reviewed and professionally certified.

(2) An operating certificate or any renewal thereof shall be valid for a period of 5 years from the date of issuance, unless sooner revoked by order of the department, and may be renewed upon application to the department.

(3) Upon receipt of an application for the issuance of an operating certificate or any renewal thereof, the department, in its discretion, may issue a temporary operating certificate valid for a period not to exceed 90 days.

The temporary certificates granted to Atlantic States were issued pursuant to *N.J.S.A.* 26:2C–9.2(c)(3), which gives DEP the authority, "in its discretion," to grant a temporary certificate for a period not to exceed 90 days, "[u]pon receipt of an application for the issuance of an operating certificate or any renewal thereof." *N.J.S.A.* 26:2C–9.2(c)(3). Further, the APCA authorizes the DEP to take actions necessary to prevent air pollution. *See N.J.S.A.* 26:2C–9(e). Therefore, the DEP may move to enjoin activities that result in air pollution, thus violating the APCA and causing harm to the public health and safety.

The APCA provides no definition for the terms "license," "permit," "certificate," or "temporary certificate." *See N.J. S.A.* 26:2C–2. DEP regulations pertaining to APCA permits

and certificates do provide definitions for all the enumerated terms except "license." *See N.J.A.C.* 7:27–8.1. Under *N.J.A.C.* 7:27–8.1 "certificate" is defined as "either an operating certificate or temporary operating certificate." *Ibid.* "Temporary operating certificate" is defined to mean "a 'Certificate to Operate Control Apparatus or Equipment' issued by the Department pursuant to . . . (*N.J.S.A.* 26:2C–9.2), which is valid for a period not to exceed 90 days." "Permit" is defined as a " 'Permit to Construct, Install or Alter Control Apparatus or Equipment' issued by the Department pursuant to . . . (*N.J.S.A.* 26:2C–9.2)." These definitions obviously are based on and have as their root the DEP's authority found in *N.J.S.A.* 26:2C–9.2.

The DEP has also enacted regulations regarding applications for permits and certificates. *See N.J.A.C.* 7:27–8.4 and 8.5. Although these regulations provide for conditions the DEP may impose on permits or certificates, as well as standards for approval or denial of applications, they do not establish any procedural guidelines for hearings. Although we are advised that earlier regulations, no longer in effect, provided for hearings, neither the APCA nor the related regulations contain any specific provisions pertaining to hearings in the event a permit or certificate is denied, revoked or not renewed. *But see N.J.S.A.* 26:2C–14.1 (procedure for requesting hearings when persons are aggrieved by Department orders); *N.J.A.C.* 7:27A–3.1 (procedure for hearings contesting civil administrative penalties). Where a statue does not specifically provide that a hearing is not required when an agency decides to revoke, suspend or refuse to renew a license, then a hearing may be provided under the APA. *See N.J.S.A.* 52:14B–11.

The APA defines a "license" to include "the whole or part of any agency license, permit, certificate, approval, chapter, registration or other form of permission required by law." *N.J.S.A.* 52:14B–2. "When a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent." *State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 101,

557 *A*.2d 277 (1989). Clearly, DEP granted and continually renewed for Atlantic States a 90–day temporary operating certificate that enabled Atlantic States to construct, install and/or alter its air pollution control equipment in conformity with the APCA.

The DEP argues, however, that notwithstanding the broad definition of "license" found in the APA, a temporary operating certificate was not a license. It maintains that a temporary certificate is a pre-licensing device that enables an applicant to operate its equipment for a short time so that DEP can monitor the operation to ensure that it complies with APCA requirements. DEP contends that if the air pollution control equipment and operation is somehow deficient, it is under an obligation not to grant a full five-year operating certificate or to renew the temporary certificate, *N.J.S.A.* 26:2C–9.2(c), and at most is required to provide a post-deprivation hearing.

DEP refers this court to *Matter of Stream Encroachment Permit*, 231 *N.J.Super.* 443, 458, 555 *A*.2d 1123 (App.Div.), certif. den., 115 *N.J.* 70, 556 *A*.2d 1214 (1989), where we noted that it was permissible for DEP to issue a temporary permit in order to determine if an applicant for a solid waste resource recovery facility permit was capable of conducting operations within the requirements of the Solid Waste Management Act, *N.J.S.A.* 13:1E–1, *et seq.* DEP contends that this court held that a temporary permit was not a license "but rather an instrument available to satisfy the public interest at a time before a licensing decision could be made." This court's entire pronouncement on the subject was as follows:

> The record before us adequately demonstrates that a temporary permit was required in light of the solid waste crisis and the lead time necessary to bring a resource recovery facility on line. The requirements of the regulation that issuance was necessary to prevent or ameliorate a public health hazard and to prevent economic hardship to a public body are present. It also appears that the DEP was concerned with a potential hazard to public health, safety and the environment.
>
> Ridgefield argues that a temporary permit should not have been granted because a permanent license will not issue to American Ref–Fuel based on its disclosure statement as the Attorney General's investigation allegedly will show

certain convictions. *See N.J.S.A.* 13:1E–133b and d. *Since no license has been issued and no determination made, it would be premature for us to rule on this issue.* Moreover, it is the obligation of the DEP and the Attorney General under *N.J.S.A.* 13:1E–133 to rule in the first instance. [231 *N.J.Super.* at 458, 555 *A.*2d 1123 (emphasis supplied)].

The issue of whether a permit might be revoked without a hearing was not before the court in *Matter of Stream Encroachment Permit.*

It is well-recognized that an "occupational license is in the nature of a property right." *Graham v. N.J. Real Estate Com'n,* 217 *N.J.Super.* 130, 135, 524 *A.*2d 1321 (App.Div.1987); *see also In re Polk License Revocation,* 90 *N.J.* 550, 562, 449 *A.*2d 7 (1982); *DeVitis v. New Jersey Racing Com'n,* 202 *N.J.Super.* 484, 493, 495 *A.*2d 457 (App.Div.), certif. den., 102 *N.J.* 337, 508 *A.*2d 213 (1985). Thus, an occupational license, being a property interest, is encompassed within the protections of the Fourteenth Amendment, and any deprivation of such a license is subject to the requirements of due process. *Graham,* 217 *N.J.Super.* at 135, 524 *A.*2d 1321, citing *Board of Regents v. Roth,* 408 *U.S.* 564, 568, 92 *S.Ct.* 2701, 2705, 33 *L.Ed.*2d 548, 556 (1972) and *Mathews v. Eldridge,* 424 *U.S.* 319, 332, 96 *S.Ct.* 893, 901, 47 *L.Ed.*2d 18, 31–32 (1976). We consider an operational license to be closely analogous to an occupational license. *See, e.g., Baer v. City of Wauwatosa,* 716 *F.*2d 1117, 1121–22 (7th Cir.1983); *Coldwell Banker Res. Real Estate v. Clayton,* 105 *Ill.*2d 389, 397, 86 *Ill.Dec.* 322, 326, 475 *N.E.*2d 536, 540 (1985); *see also Sea Girt Restaurant v. Borough of Sea Girt,* 625 *F.Supp.* 1482, 1487–88 (D.N.J.1986), aff'd *sub nom., Appeal of Avon Hotel Corp.,* 802 *F.*2d 445 (3rd Cir.1986) (district court acknowledges property interest in liquor license and right to hearing before revocation but notes that revocation is governed by specific statutory procedures); *Pica Services, Inc. v. Behringer,* 593 *F.Supp.* 113, 117 (S.D.Fla.1984) (court notes that in order to determine whether a property interest exists in a permit it must look to language of statute governing permits).

In the absence of the existence of a property interest, or some other constitutional or statutory right, we have held that

the APA by itself would not entitle a party to a hearing. *Valdes v. New Jersey State Bd. of Medical,* 205 *N.J.Super.* 398, 404, 501 *A.*2d 166 (App.Div.1985). "Rather, the Act provides for a procedure to be followed 'in the event an administrative hearing is otherwise required by statutory law or constitutional mandate.'" *Ibid.,* quoting *In re Application of Modern Industrial Waste Service,* 153 *N.J.Super.* 232, 237, 379 *A.*2d 476 (App.Div.1977).

In considering DEP's argument that the temporary operating certificate held by Atlantic States was not a license, but rather a pre-license device granted in order to determine defendant's ability, we are cognizant of the proposition that an applicant for a license does not have a property interest in license until it is obtained. *Graham,* 217 *N.J.Super.* at 136, 524 *A.*2d 1321. As this court stated in *Graham:*

[A] protected right in a professional license comes into existence only after a license has been obtained. An applicant for a license has merely an expectation of obtaining a property interest. Such an expectation is not afforded the same protection under the Fourteenth Amendment as is the property right itself. [*Ibid.*].

Here, however, under DEP's own regulations, Atlantic States held a certificate/permit. *See N.J.A.C.* 7:27–8.1. Certificates and permits are clearly considered within the Legislature's definition of a license found in the APA. *See N.J.S.A.* 52:14B–2. No contrary definition is found within the APCA, *N.J.S.A.* 26:2C–1, *et seq.,* and no provision is made for temporary licenses. DEP is not required to issue a temporary certificate; rather it chose to exercise its discretion to do so under subsection 3.

The DEP asserts that the grant of a temporary operating certificate pursuant to *N.J.S.A.* 26:2C–9.2(c)(3) is not equivalent to a grant of license. We acknowledge that an administrative agency is entitled to deference when it interprets a statute it is charged with enforcing. *American Cyanamid v. D. of Envir. Prot.,* 231 *N.J.Super.* 292, 312, 555 *A.*2d 684 (App.Div.), certif. den., 117 *N.J.* 89, 563 *A.*2d 847 (1989). Nonetheless, a statute must be viewed in light of common sense given the facts

presented. 231 *N.J.Super.* at 312, 555 *A.*2d 684. It is undisputed that DEP granted Atlantic States consecutive renewals of 90–day temporary operating certificates over a period of three years. As one certificate expired another one became effective without a new application. DEP argues that this fact should be of no real consequence because each extension stated that the "temporary certificate [was] being extended to allow for further field/office evaluation." Thus, DEP maintains that once its evaluation was complete it could decide not to renew the temporary operating certificate without a predeprivation hearing.

We are satisfied that on the facts presented Atlantic States was issued a form of approval and license which permitted it to operate its business which may not in these circumstances be summarily revoked without a hearing. We cannot ignore the reality of the situation that was created as a result of DEP's continual renewal of the temporary certificates. Due to the passage of time, Atlantic States no doubt came to rely on these certificates as if they were the actual operating certificate/license. It was permitted to conduct daily operations for more than three years as if it had a full operating certificate. This was not a situation where a new company with no previous operations sought preliminary approvals from DEP in order to test its air pollution control equipment. Rather, Atlantic States had a long operating history, albeit disputed, and this fact cannot be overlooked. Atlantic States employs approximately 300 people. Cancellation of the temporary operating certificate without a hearing would work an injustice on them as well. The expectation of obtaining a license is not standing alone enough to create an actual property interest, but in these circumstances clearly there was more than a simple expectation alone. *See Graham*, 217 *N.J.Super.* at 136, 524 *A.*2d 1321.

We have weighed all of the competing interests in this case, including Atlantic States' expectation that it might remain in operation with its temporary certificate pending a hearing and DEP's obligation to enforce the APCA in order to protect the

public health and safety in light of other remedies available to the agency to enjoin violations which endanger the public. *See In re Polk License Revocation,* 90 *N.J.* at 562, 449 *A.*2d 7. We conclude that Atlantic States is entitled to an administrative hearing prior to a final decision not to renew its temporary certificate or not to grant a full five-year operating certificate. *Ibid.* Affording this hearing, to our view, does not impose an inordinate burden on DEP and is required even without regard to the statute by reason of the property interest established over a period of time. *See American Cyanamid,* 231 *N.J.Super.* at 312, 555 *A.*2d 684.

The order of the Law Division denying defendant Atlantic States an adjudicatory administrative hearing regarding renewal of its temporary operating certificate is reversed. The matter is remanded to the Department of Environmental Protection so that all necessary steps to provide an administrative hearing may be promptly carried out pursuant to APA procedures.