23 A.3d 958

LAKESIDE MANOR, APPELLANT, v. STATE OF NEW
JERSEY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, RESPONDENT.

MOUNTAIN LAKES ESTATES, APPELLANT, v. STATE OF
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 15, 2011—Decided August 1, 2011.

Before Judges PARRILLO, ESPINOSA and SKILLMAN.

*Stephen Eisdorfer* argued the cause for appellants (*Hill Wallack*, attorneys; *Mr. Eisdorfer*, on the briefs).

*Jason T. Stypinski,* Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Mr. Stypinski,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D. (retired and temporarily assigned on recall).

In August 2004, the Governor signed into law the Highlands Water Protection and Planning Act (the Highlands Act), *N.J.S.A.* 13:20-1 to –35, which provides for regional land use planning in a part of the northwest corner of the State called the Highlands Region. *See N.J.S.A.* 13:20-7(a). The Highlands Act creates two areas within the Highlands Region: a planning area in which development consistent with the Act's goals is encouraged, and a preservation area, in which further development is strictly regulated. *See N.J.S.A.* 13:20–7(b), (c); *N.J.S.A.* 13:20–10(b), (c).

The Highlands Act contains a number of exemptions from its regulatory provisions, including one for any major Highlands development project that received one of a specified list of municipal land use approvals under the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163, and at least one of a specified list of permits issued by the Department of Environmental Protection (DEP) before March 29, 2004. *N.J.S.A.* 13:20–28(a)(3). This appeal requires us to interpret the requirements of this exemption.

## I.

Appellants are affiliated companies that own adjacent tracts of land in the preservation area of the Highlands Region. On October 21, 1999, appellants obtained amended preliminary and final subdivision and site plan approvals for development of the two sites. Mountain Lakes obtained approval for the subdivision of a 130–acre site into 128 building lots for detached single family homes. Lakeside Manor obtained site plan approval for construc-

tion of forty-seven three-bedroom townhouses on a 10.801–acre site.

After obtaining these municipal land use approvals, appellants applied for and obtained DEP permits for construction of the facilities required to provide sanitary sewer and water service to the proposed developments. On September 7, 2000, the DEP issued treatment works approvals (TWAs) to the Wanaque Borough Sewerage Authority (Sewerage Authority) authorizing construction and operation of sewer systems to serve the developments. On March 9, 2001, the DEP issued permits to the Wanaque Borough Water Department (Water Department) for construction of water main extensions to serve the developments. Appellants also obtained a number of other state, county, and municipal approvals required for construction of their development projects.

Based on its TWA, Lakeside Manor constructed the complete sewer lines for its development. Those sewer lines were approved by the Sewerage Authority in 2002 and put into service in 2003. Based on its water extension permit, Lakeside Manor also constructed the complete water lines for its development. In addition, Lakeside constructed the roadway system for the entire development, obtained building permits for eighteen townhouse units in three buildings, and actually constructed six units.

Based on its TWA, Mountain Lakes constructed the main sewer line into its development and constructed laterals from the main sewer line into the building envelopes for thirteen houses. This sewer line was approved by the Sewerage Authority in 2002 and put into service in 2003. Based on its water extension permit, Mountain Lakes extended the water line sufficiently to provide water service to those thirteen homes. The Water Department approved this extension and three houses were connected to the water line.

The effective date for the exemption from the Highlands Act provided by *N.J.S.A.* 13:20–28(a)(3) was March 29, 2004, which was approximately four-and-a-half months before enactment of the

Highlands Act.[1] As of that date, appellants had obtained the municipal land use approvals required for their development projects and the required DEP permits for sewer and water service.

On July 28, 2005, appellants filed a combined application to the DEP for a "Highlands Applicability Determination" that their development projects were exempted under *N.J.S.A.* 13:20–28(a)(3) from the regulatory provisions of the Highlands Act. *See N.J.A.C.* 7:38–2.4(a)(2). In support of this application, appellants submitted evidence that their development projects had received both the required municipal land use approvals and the required DEP permits for water and sewer service before the March 29, 2004 cut-off date for applicability of the exemption.

On January 25, 2006, the DEP denied appellants' application. This denial was based partly on the DEP's conclusion that the permits for construction of sewer and water service had expired. The DEP also questioned whether the municipal land use approvals were still in effect.

Appellants filed a request for an adjudicatory hearing to contest the denial of their applications. The DEP transferred the matter to the Office of Administrative Law, and an Administrative Law Judge (ALJ) conducted a two-day evidentiary hearing regarding appellants' entitlement to the exemption provided by *N.J.S.A.* 13:20–28(a)(3).

At that hearing, Jacinto Rodriguez, who is president and sole owner of both Lakeside Manor and Mountain Lakes, testified that his companies had spent several million dollars in professional fees for designing the developments and obtaining the various approvals required to authorize their construction. After obtaining the required approvals for constructing the roadways and sidewalks

---

[1] In *OFP, L.L.C. v. State,* 395 *N.J.Super.* 571, 590–95, 930 *A.2d* 442 (App.Div. 2007), *aff'd o.b.,* 197 *N.J.* 418, 963 *A.2d* 810 (2008), we rejected arguments that this retroactive date for application of the exemption violated the Due Process Clauses of the United States and New Jersey Constitutions and resulted in "manifest injustice."

for the entire development and all the utilities, including the water and sewer lines, Lakeside Manor was issued building permits for eighteen townhouses in three buildings. It subsequently completed all construction of three townhouses, most construction of three other townhouses, and site preparation work for the remaining townhouses. After obtaining the required approvals for construction of its development and constructing the roadway system as well as utilities, including water and sewer lines, for parts of its proposed development, Mountain Lakes obtained building permits for four single-family homes and completed construction of two of those homes. Rodriguez estimated that the total amount his companies expended for roadways, utilities and the ten partially or wholly constructed residences was more than $2.5 million.

The ALJ found in his recommended initial decision that appellants "completed construction of the permitted sanitary sewer systems for the Lakeside Manor project and phase one of the Mountain Lakes Estates project in 2001–02," and also "completed construction of the permitted water main extensions prior to March 9, 2004." The ALJ rejected the DEP's view that even though appellants completed construction of the entire sewer system for Lakeside Manor and part of the sewer system for Mountain Lakes before March 29, 2004, this construction was unlawful because the Sewerage Authority failed to obtain approval of a revision to its wetlands map or a waiver of this approval from the United States Environmental Protection Agency (EPA). The ALJ also rejected the DEP's view that the water extension permits expired before March 29, 2004 because even though the extensions were completed before then, they were not connected to individual residences, most of which had not been constructed by the cut-off date for the exemption provided by *N.J.S.A.* 13:20–28(a)(3). Accordingly, the ALJ concluded that appellants were entitled to the benefits of that exemption.

After receiving extensive exceptions from the DEP to the ALJ's recommended decision, the Commissioner of the DEP issued a final decision on September 4, 2009, which rejected the ALJ's

recommended decision and determined that appellants were not exempt from regulation under the Highlands Act. The Commissioner concluded that Mountain Lakes failed to present adequate evidence of the "current validity," as of March 29, 2004, of the subdivision approval for its site, as required by *N.J.S.A.* 13:20–28(a)(3)(a)(iv). The Commissioner also concluded that neither Mountain Lakes nor Lakeside Manor had a valid "water extension permit," as required by *N.J.S.A.* 13:20–28(a)(3)(b)(ii). The Commissioner determined that even though the water mains for both developments were constructed before March 29, 2004, appellants had failed to satisfy condition ten of the permits, which required the water mains to be "put into service" within three years of issuance of the permit. In addition, the Commissioner concluded that neither Mountain Lakes nor Lakeside Manor had a valid "treatment works approval" (TWA), as required by *N.J.S.A.* 13:20–28(a)(3)(b)(iv), because even though they constructed sewer lines before March 29, 2004, they failed to obtain a revision of their wetlands mapping or a waiver of this requirement from the EPA before construction. The Commissioner also concluded that this failure could not be "retroactively remedied." Consequently, the Commissioner decided that appellants' TWAs became "null and void" as of the date they began construction of the sewer lines.

Appellants filed a timely appeal from this final agency decision. During the pendency of the appeal, the current Commissioner of the DEP issued a "supplemental final decision." We granted the DEP's motion to supplement the record with that decision.

## II.

We first address the part of the Commissioner's decision which concludes that Mountain Lakes was not entitled to an exemption from the Highlands Act because it failed to supply documentation of the "current validity" of the land use approvals

for its development that the Wanaque Planning Board granted on October 21, 1999.[2]

When appellants' counsel objected to the introduction of a document on the ground it was inconsistent with the DEP's prior admission that the local land use approvals remained valid, the DEP's counsel stipulated to the continuing validity of those approvals. The record provides no support for the DEP's contention that this stipulation was limited to the Lakeside Manor development.

Furthermore, the record clearly indicates that the subdivision and associated approvals for the Mountain Lakes development were effective as of the March 29, 2004 cut-off date for the exemption from the Highlands Act provided by *N.J.S.A.* 13:20–28(a)(3). Jacinto Rodriguez, the president and sole owner of Mountain Lakes, testified that he obtained building permits for four houses in that development and constructed two of them. A third house was enclosed, with the plumbing and electricity installed, the foundation was poured on a fourth, and site preparation work was done on several others. It is inconceivable Wanaque would have issued building permits for this construction if there were any question about the continuing effectiveness of the land use approvals for the development. Thus, even without the stipulation by the DEP's counsel, Mountain Lakes undoubtedly could have established that the municipal land use approvals for this development were still in effect. Therefore, the Commissioner erred in concluding that Mountain Lakes did not present adequate proof of this prerequisite for the exemption from the Highlands Act provided by *N.J.S.A.* 13:20–28(a)(3).

### III.

We next consider the Commissioner's conclusion that appellants failed to establish the second prerequisite for the exemp-

---

[2] The Commissioner did not question the continuing effectiveness of the land use approvals for the Lakeside Manor development.

tion from the regulatory provisions of the Highlands Act provided by *N.J.S.A.* 13:20–28(a)(3)—that their developments received "at least one of the ... [DEP] permits" listed in *N.J.S.A.* 13:20–28(a)(3)(b) before March 29, 2004. We conclude that the Commissioner erred in determining that appellants had not received "[TWAs] pursuant to the 'Water Pollution Control Act,' " *N.J.S.A.* 13:20–28(a)(3)(b)(iv), before that date. This conclusion makes it unnecessary to decide whether the Commissioner also erred in determining that appellants did not receive "a water extension permit or other approval or authorization pursuant to the 'Safe Drinking Water Act,' " *N.J.S.A.* 13:20–28(a)(3)(b)(ii), because an applicant for an exemption under *N.J.S.A.* 13:20–28(a)(3) is only required to show that it received "one of" the DEP permits listed in *N.J.S.A.* 13:20–28(a)(3)(b) before the March 29, 2004 cut-off date.

It is undisputed that on September 7, 2000, the DEP issued TWAs to the Sewerage Authority to construct the sewer lines required to serve appellants' developments. It is also undisputed that appellants constructed those sewer lines long before the March 29, 2004 cut-off date for the exemption provided by *N.J.S.A.* 13:20–28(a)(3). Nevertheless, the Commissioner concluded that appellants did not have "valid" TWAs as of that date because they failed to obtain the EPA's approval for a revision of the wetlands mapping of their properties or a waiver of that requirement. The Commissioner reasoned that this failure rendered the TWAs "null and void" as of the date appellants began construction of sewers and thus this "qualifying approval[ ] expire[d]," *N.J.S.A.* 13:20–28(a)(3)(c), before March 29, 2004.

The TWA for the Lakeside Manor development required that "a mapping revision or waiver must be obtained from the ... USEPA ... prior to the initiation of construction." Similarly, a TWA issued for the Mountain Lakes development in 1996 required a mapping revision or waiver prior to construction, and the TWA issued to Mountain Lakes in 2000 was an extension of the 1996 TWA, which provided that "all ... conditions ... [of the 1996

TWA] remain in effect." Thus, the TWAs for both developments were conditioned upon revisions of the federal wetlands mapping or waivers of that requirement being obtained before the sewer lines were constructed.

Furthermore, although the TWAs were issued to the Sewerage Authority, appellants entered into developer agreements with Wanaque under which they assumed responsibility for construction of the sewer mains, and it is undisputed that appellants did not request the Sewerage Authority to submit a wetlands mapping revision or application for waiver to the EPA before initiating this construction. Consequently, appellants cannot absolve themselves of responsibility for the violation of this condition of the TWAs.

However, there is no basis for the Commissioner's conclusion that the violation of this condition rendered the TWAs "null and void" and that the TWAs had therefore "expired" when appellants began construction of the sewer lines. A violation of a condition of a permit may provide grounds for its revocation. *See N.J. Dep't of Envtl. Prot. v. Atl. States Cast Iron Pipe Co.*, 241 *N.J.Super.* 591, 599–604, 575 *A*.2d 895 (App.Div.1990). However, such revocation does not occur automatically. The agency issuing the permit must bring a proceeding on notice to the permittee seeking revocation. *Kerley Indus., Inc. v. Pima County*, 785 *F*.2d 1444, 1446 (9th Cir.1986); *Atl. States Cast Iron Pipe Co., supra,* 241 *N.J.Super.* at 603–04, 575 *A*.2d 895; *see also In re Fanelli*, 174 *N.J.* 165, 172–74, 803 *A*.2d 1146 (2002). Moreover, even if a violation of a condition of the permit is established, the agency must determine whether revocation is an appropriate remedy for the violation. *See Fanelli, supra,* 174 *N.J.* at 180–81, 803 *A*.2d 1146. And even if the permit is revoked, this does not mean that the permit ceased to exist as of the date the condition was violated or that any action taken in reliance on the permit before its revocation is invalid.

These general principles are fully applicable to the TWAs issued to appellants under the authority of the Water Pollution Control Act (WPCA), *N.J.S.A.* 58:10A–1 to –43. The WPCA authorizes

the Commissioner to "revoke a permit in whole or in part" if the permittee violates "any term or condition of the permit." *N.J.S.A.* 58:10A–7(b)(1)(a). However, before the Commissioner may revoke a permit, he must give the permittee notice of the proposed revocation and an opportunity for an administrative hearing in accordance with the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15. *N.J.S.A.* 58:10A–7(d). There is no authorization in the WPCA for the Commissioner to circumvent these procedural protections by declaring a TWA or other permit "null and void" based on a violation of a condition of the permit.

Therefore, the Commissioner erred in concluding that the TWAs automatically "expired" when appellants began construction of the sewer lines because the construction violated a condition of the TWAs.

Furthermore, if the Commissioner had correctly viewed appellants' violations of the TWA conditions requiring revised wetlands mapping before starting construction as only providing a possible ground for revocation, rather than retroactively invalidating the TWAs as of the date appellants started construction, it would have been clear those violations did not warrant revocation. It is undisputed that the sewer lines appellants constructed in accordance with the TWAs do not intrude upon federal wetlands. In fact, this was recognized by the DEP's staff before the TWAs were issued. Consequently, if appellants had applied to the EPA for approval of revised wetlands mapping of their sites or a waiver of this requirement, their applications undoubtedly would have been granted. Therefore, their violations of this condition were purely technical and had no adverse effect upon the environment. Under these circumstances, it would have been arbitrary and capricious for the Commissioner to have revoked appellants' TWAs based on their violations of this condition. The Commissioner would have been justified, at most, in requiring appellants to comply with this condition now by filing the appropriate applications with the EPA, which would confirm that there was no environmental basis for disapproval of the sewer lines. *See A.R.*

*Criscuolo & Assocs. v. N.J. Dep't of Envtl. Prot.,* 249 *N.J.Super.* 290, 299–300, 592 *A.*2d 313 (App.Div.1991).

## IV.

Finally, we conclude that the part of the Commissioner's final decision that discusses the Water Quality Planning Act, *N.J.S.A.* 58:11A–1 to –16, and Water Quality Management Planning (WQMP) Rules, *N.J.A.C.* 7:15–1.1 to –9.8, does not set forth a basis for determining that appellants are not entitled to the exemption from the Highlands Act provided by *N.J.S.A.* 13:20–28(a)(3). This part of the Commissioner's decision states in pertinent part:

> [U]nder the [Water Quality] Planning Act (as amended by the Highlands Act), designated sewer service areas for which wastewater collection systems were not legally installed on or before August 10, 2004 were revoked and any associated TWAs in the impacted area expired on that same date *unless the development is exempt from the Highlands Act.* . . .

> Because no mapping revision or grant waiver was ever obtained and construction of the sewer lines was not lawfully completed before August 10, 2004, the designated sewer service areas here were revoked and the associated TWAs issued for the projects expired by operation of law on August 10, 2004. . . . Accordingly, the TWAs were found to be inconsistent with the [Water Quality] Planning Rules and the Northeast Areawide WQMP.

> [Emphasis added.]

Thus, this part of the Commissioner's decision is dependent upon the assumption that appellants are not entitled to an exemption under *N.J.S.A.* 13:20–28(a)(3). However, we have previously concluded for the reasons set forth in sections II and III of this opinion that appellants are entitled to such an exemption. Therefore, the Water Quality Planning Act and WQMP Rules do not provide an independent basis for upholding the Commissioner's decision.

Accordingly, the Commissioner's decision determining that appellants' developments are not exempt from the Highlands Act is reversed.