748 A.2d 1156 (2000)
330 N.J. Super. 55
CHRIST HOSPITAL, Appellant,
v.
DEPARTMENT OF HEALTH AND SENIOR SERVICES, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 2000.
Decided April 12, 2000.
*1157 Charles A. Reid, III, Florham Park, for appellant Christ Hospital (Drinker, Biddle & Shanley, attorneys, Mr. Reid, on the brief).
Mylyn K. Alexander, Deputy Attorney General, for respondent Department of Health and Senior Services (John J. Farmer, Jr., Attorney General, attorney, Michael J. Haas, Assistant Attorney General, of counsel, Ms. Alexander, on the brief).
Zulima V. Farber, Roseland, for intervenor-respondents Jersey City Medical Center, Meadowlands Hospital Medical Center and Bayonne Hospital (Lowenstein Sandler, attorneys, Ms. Farber and Michael E. Petrella, on the brief).
Before Judges SKILLMAN, NEWMAN and FALL.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the Department of Health and Senior Services (Department) may refuse to renew a hospital's license to operate a medical facility without affording the hospital an opportunity for a hearing on the ground that the license was issued under a pilot program that provided for automatic expiration of the license unless the hospital satisfied specific regulatory conditions for renewal.
On January 25, 1996, the Department adopted new regulations designed to expand the number of hospital facilities providing low risk cardiac catheterization services.[1] 28 N.J.R. 1252 (Feb. 20, 1996). These regulations established a pilot program under which hospitals could be issued certificates of need and licenses to operate cardiac catheterization laboratories for a period not to exceed thirty months. N.J.A.C. 8:33E-1.12(d)2. To assure that the catheterizations performed under this program were safe and that the laboratories were operated efficiently, the regulations imposed utilization standards that had to be satisfied as a condition of continued licensure. Hospitals participating *1158 in the program were required to perform at least 350 catheterizations per year, N.J.A.C. 8:33E-1.4(c)1, and each physician with privileges at the laboratory was required to perform at least 50 catheterizations per year, N.J.A.C. 8:33E-1.4(c)2. In addition, the Director of the laboratory was required to perform at least 150 catheterizations per year, of which at least 100 had to be performed at the pilot laboratory. N.J.A.C. 8:33E-1.4(c)2. The regulations also imposed "quality of care" standards, including a requirement that the percentage of "normal" cardiac catheterization tests not exceed twenty-five percent of the total tests. N.J.A.C. 8:33E-1.6(d)2.[2]
Hospitals that received licenses under this program were allowed twenty-six months within which to document compliance with these requirements. N.J.A.C. 8:33E-1.14(b)1. The regulations further provided that upon receipt of a hospital's documentation, "the Department ... shall, no later than the completion of the 30th month following the month in which the facility initiated services ..., communicate a decision to the facility as to whether the license to provide services approved under this pilot catheterization program will be renewed." N.J.A.C. 8:33E-1.14(c).
Appellant Christ Hospital, which is located in Jersey City, was one of forty hospitals granted certificates of need to provide low-risk cardiac catheterizations pursuant to these regulations. On June 6, 1997, Christ Hospital was granted an initial license to operate a catheterization laboratory for a twenty-four month period. On June 1, 1999, the Department notified Christ Hospital that its license was extended for an additional six-month evaluation period and that the license would automatically terminate on December 31, 1999, unless the hospital could demonstrate compliance with the requirements set forth in the regulations.
On December 15, 1999, the Department notified Christ Hospital, in a letter signed by the Director of the Certificate of Need and Acute Care Licensure Program,[3] that its license would not be renewed and that it must cease performing cardiac catheterization services as of December 31, 1999, because it had failed to demonstrate full compliance with all the licensing renewal standards set forth in N.J.A.C. 8:33E-1.14. Specifically, the Department indicated that the Director of Christ Hospital's cardiac catheterization laboratory had only performed 78 catheterizations at the hospital, 22 less than the required 100 catheterizations per year. In addition, 41.7% of Christ Hospital's catheterizations had normal results, which exceeded the 25% maximum for normal cases specified in the regulations. The hospital demonstrated compliance with all of the other requirements of the program, including the requirement that the Director perform at least 150 total catheterizations per year, that each physician using the laboratory perform at least 50 catheterizations per year, and that at least 350 catheterizations per year be performed in the laboratory.
The Department did not offer Christ Hospital the opportunity for a hearing or other administrative review to contest the agency's decision not to renew its license to perform low risk cardiac catheterization services.
*1159 On December 31, 1999, Christ Hospital filed a notice of appeal from the Department's December 15, 1999 decision refusing to renew its license. We granted a stay pending the outcome of the appeal and established an accelerated schedule for briefing and argument. In addition, we allowed Jersey City Medical Center, Meadowlands Hospital Medical Center and Bayonne Hospital, which operate cardiac catheterization laboratories in the same area as Christ Hospital, to intervene in the appeal.
We conclude that the Department violated the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -24, by failing to offer Christ Hospital an opportunity for an administrative hearing to contest the refusal to renew its license. Accordingly, we remand the matter for a hearing.
Although the right to an administrative hearing generally must be found outside the APA in another statute or constitutional provision, see Limongelli v. New Jersey State Bd. of Dentistry, 137 N.J. 317, 325, 645 A.2d 677 (1993), the APA itself grants a right to a hearing when an agency revokes or refuses to renew a license. N.J.S.A. 52:14B-11 provides that "[n]o agency shall revoke or refuse to renew any license unless it has first afforded the licensee an opportunity for a hearing in conformity with the provisions of this act applicable to contested cases." See also 37 New Jersey Practice, Administrative Law and Practice § 115, at 134 (Steven L. Lefelt) (1988) (noting that N.J.S.A. 52:14B-11 is the "one instance" where the APA itself provides hearing rights).
By its own terms, N.J.S.A. 52:14B-11 does not apply "where a statute provides that an agency is not required to grant a hearing in regard to revocation, suspension or refusal to renew a license...." However, the Health Care Facilities Planning Act (the Act), N.J.S.A. 26:2H-1 to -91, does not authorize the Department to refuse renewal of a license without affording the licensee an opportunity for a hearing. To the contrary, even though the Act does not deal specifically with a refusal to renew a license, N.J.S.A. 26:2H-13 provides that "[t]he department shall afford the licensee an opportunity for a prompt hearing on the question of ... the issuance, suspension or the placing on a probationary or provisional license, or revocation of the license." Thus, the Act explicitly recognizes that a licensee has a sufficient interest in retaining its license to be entitled to a hearing before the license may be denied, suspended or revoked.[4]
The Department argues that N.J.S.A. 52:14B-11 does not apply to this case because Christ Hospital's license "automatically expired" after thirty months. However, the regulations that governed the pilot cardiac catheterization program expressly authorized the renewal of a license at the expiration of this initial period if the licensee demonstrated compliance with the standards for continued licensure. N.J.A.C. 8:33E-1.14(b). Applying these regulations, the Department refused to renew Christ Hospital's license on the ground that the hospital had failed to demonstrate compliance with all the standards that governed the pilot program. This administrative action constituted a "refus[al] to renew [a] license" within the intent of N.J.S.A. 52:14B-11.
The Department's argument that Christ Hospital's license automatically expired at the conclusion of the initial thirty-month licensure period is similar to an argument *1160 we rejected in New Jersey Dep't of Envtl. Protection v. Atlantic States Cast Iron Pipe Co., 241 N.J.Super. 591, 575 A.2d 895 (App.Div.1990). In that case, the Department of Environmental Protection (DEP) issued a temporary permit to install pollution control equipment. After regularly renewing the permit every ninety days over a three-year period, the DEP denied a further renewal on the ground that the permittee was not operating its equipment in accordance with the governing statute and regulations. The DEP rejected the permittee's request for a hearing, taking the position that "the permit is no more than a temporary operating certificate, valid for 90 days, issued for the purpose of pre-license testing of ... air pollution control equipment ... and is not a license for which there is a right of renewal." Id. at 592, 575 A.2d 895. However, we concluded that the temporary permit constituted "a form of approval and license which permitted [the permittee] to operate its business" and that it could not be "summarily revoked without a hearing." Id. at 603, 575 A.2d 895.
We reach the same conclusion in this case. Although Christ Hospital's license to operate a cardiac catheterization facility was only effective for a period of thirty months, it was nevertheless a license within the intent of the APA.[5] Moreover, the regulations under which the license was issued expressly provided for renewal upon a showing that the licensee had complied with the standards set forth in the regulations. N.J.A.C. 8:33E-1.14(b). In fact, twenty of the thirty-two hospitals that were issued licenses under the pilot program had their licenses renewed at the expiration of the thirty-month period, including five hospitals that were granted "conditional renewals" even though they did not satisfy all the standards set forth in the regulations. Therefore, the Department's refusal to renew Christ Hospital's cardiac catheterization license constituted discretionary agency action that the hospital is entitled to challenge in an administrative hearing.
The Department and the intervenors also argue that Christ Hospital "waived" its right to an administrative hearing by participating in the pilot cardiac catheterization program without objecting to the standards for continued licensure. Although there are some circumstances under which statutory rights may be waived, see, e.g., Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 391, 703 A.2d 961 (App.Div.1997), even in those circumstances, "any such waiver must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." Red Bank Regional Educ. Ass'n v. Red Bank Regional High Sch. Bd. of Educ., 78 N.J. 122, 140, 393 A.2d 267 (1978). The Department never notified Christ Hospital that, in order to be admitted into the pilot cardiac catheterization program, it had to waive its right to a hearing to contest any refusal to renew its license, and Christ Hospital certainly did not agree to any such condition. Consequently, the Department did not show a clear and unmistakable waiver of the right to a hearing.
In any event, an administrative agency has no authority to condition the issuance of a license upon the licensee agreeing to waive its right to a hearing to contest a refusal to renew the license. Administrative agencies are creatures of statute that must comply with the substantive and procedural requirements of any applicable legislation. See In re Closing of Jamesburg High Sch., 83 N.J. 540, 549, 416 A.2d 896 (1980). N.J.S.A. 52:14B-11 reflects a legislative determination that a licensee must be afforded an opportunity for a hearing to contest a refusal to renew *1161 its license. An administrative agency may not deprive a licensee of this statutory right by requiring, as a condition of initial licensure, that the licensee waive its right to a hearing if the agency decides not to renew the license.
The Department also argues that Christ Hospital is not entitled to a hearing because there are no disputed factual issues relevant to the refusal to renew its cardiac catheterization license. See Contini v. Board of Educ. of Newark, 286 N.J.Super. 106, 120-22, 668 A.2d 434 (App. Div.1995), certif. denied, 145 N.J. 372, 678 A.2d 713 (1996). However, we are satisfied that Christ Hospital has raised genuine factual issues that preclude summary disposition without the opportunity for an administrative hearing. Christ Hospital challenges the reasonableness of the criteria that the Department employs to classify the results of a catheterization as "normal." [6] It also claims that the Department acted arbitrarily in refusing to consider audit results which showed that the "normal" catheterizations performed at Christ Hospital were "medically indicated." In addition, the hospital contends that the Department acted arbitrarily by conditionally renewing the licenses of other hospitals which failed to show compliance with all the regulatory standards while refusing to make similar "allowances" for "statistical deficiencies" in Christ Hospital's program. Although Christ Hospital's brief suggests that there may be other factual issues relevant to the reasonableness of the Department's refusal to renew its license, we express no opinion concerning the precise scope of the factual issues that may be raised on remand because this subject was not fully explored in the parties' briefs.
Accordingly, we reverse the Department's final decision denying Christ Hospital's application for renewal of its low-risk cardiac catheterization license and remand for an evidentiary hearing. Jurisdiction is not retained.
NOTES
[1] "`Cardiac catheterization' means the insertion of a thin, flexible tube (catheter) into a vein or artery and guiding it into the heart for purposes of determining cardiac anatomy and function." N.J.A.C. 8:33E-1.2.
[2] The regulations did not include any definition of a "normal" cardiac catheterization test. However, a letter to Christ Hospital from an Assistant Commissioner of the Department states that a "normal" study refers to a catheterization which results in a showing of less than fifty percent "stenosis" (narrowing or constriction) in all of the major arteries or branches and an absence of any evidence of valvular disease.
[3] We note that both the Health Care Facilities Planning Act and the regulations governing the low risk cardiac catheterization pilot program seem to contemplate that any final decision regarding a party's right to a license shall be made by the Commissioner of Health and Senior Services rather than a lower level official. See N.J.S.A. 26:2H-13; N.J.A.C. 8:33E-1.13(b); N.J.A.C. 8:33E-1.14(b). However, Christ Hospital has not challenged the Department's final decision on this basis.
[4] Because N.J.S.A. 52:14B-11 clearly confers a right to an administrative hearing when an agency refuses to renew a license, and Christ Hospital does not rely upon N.J.S.A. 26:2H-13, there is no need to decide whether the hospital would be entitled to a hearing under N.J.S.A. 26:2H-13 even if N.J.S.A. 52:14-11 did not apply. There also is no need to consider the hospital's alternative argument that "its license to operate a cardiac catheterization lab is a `property interest' that is subject to Constitutional due process requirements, including an opportunity to be heard."
[5] N.J.S.A. 52:14B-2(f) defines "license" as including "the whole or part of any agency license, permit, certificate, approval, chapter, registration or other form of permission required by law."
[6] In its letter notifying Christ Hospital that its license would not be renewed, the Department indicated that it "recognize[d] the underlying uncertainty inherent in the clinical determination of a normal study, particularly the absence of an objective means of assessing 50% stenosis, and the presence of a relatively small number of cases where patients with significant cardiac disease (e.g., cardiomyopathy) would nonetheless appear to be a normal coronary study." In addition, the Department has acknowledged that "[t]here are no known studies, literature or guidelines setting appropriate normal standards for only low-risk patients."