842 A.2d 200

IN THE MATTER OF PATHMARK STORES,
INC. AND PLAINBRIDGE, LLC.

Superior Court of New Jersey
Appellate Division

Argued December 2, 2003—Decided February 20, 2004.

---

[4] *N.J.S.A.* 2A:17–56.23a and 42 *U.S.C.A.* § 666(a)(9)(C) prohibit retroactive modification of child support orders except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was filed.

Before Judges SKILLMAN, COBURN and FISHER.

*M. Paige Berry* argued the cause for appellant (*Reed Smith LLP*, attorney; *Ms. Berry*, of counsel; *Ms. Berry and Thomas J. Burns, III*, on the brief).

*Karyn G. Gordon*, Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey*, Attorney General, attorney; *Patrick DeAlmeida*, Deputy Attorney General, of counsel; *Ms. Gordon*, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal involves interpretation of the provision in the Employers' Liability Insurance Law, *N.J.S.A.* 34:15–70 to –93, which allows an employer that can demonstrate the financial capacity to pay workers' compensation benefits to obtain an exemption from the obligation to insure this liability.

Appellant Pathmark Stores, Inc. and Plainbridge, LLC (Pathmark) own and operate more than one hundred supermarkets in Delaware, New Jersey, New York and Pennsylvania. In 1979, respondent Department of Banking and Insurance granted Pathmark's application for an exemption under *N.J.S.A.* 34:15–77 from the obligation to insure its liabilities for workers' compensation benefits. The Department granted renewals of this exemption every year until 2002.

In early 2002, the Department received an application from PTMK Corp., a subsidiary of Pathmark, for an initial exemption from the obligation to insure workers' compensation benefits. This application triggered an examination by the Department of Pathmark's financial condition. As part of this examination, the Department obtained a risk assessment report from Dun & Bradstreet concerning Pathmark and its subsidiaries. This report concluded that Pathmark no longer has the financial capacity to self-insure its liabilities for workers' compensation benefits. Based on the Dun & Bradstreet report, the Department denied PTMK's application for an exemption from the obligation to insure its liabilities for workers' compensation benefits and also denied Pathmark's application for a renewal of its exemption.

After receiving notice of this agency action, Pathmark sought and was granted an opportunity to review the Dun & Bradstreet report and an extension of the effective date of the non-renewal of its exemption until September 30, 2002.

On July 15, 2002, Pathmark requested the Department to reconsider its decision to deny renewal of Pathmark's exemption. This request was supported by a report prepared by the investment banking firm of Houlihan, Lokey, Howard & Zukin, which

concluded that Pathmark had the financial capacity to self-insure its liabilities for workers' compensation benefits. The Houlihan, Lokey report also strongly criticized Dun & Bradstreet's analysis of Pathmark's financial condition. The Department subsequently obtained a supplemental report from Dun & Bradstreet, which disagreed with the analysis and conclusions in the Houlihan, Lokey report and reaffirmed Dun & Bradstreet's conclusion that Pathmark does not have the financial capacity to self-insure.

On November 15, 2002, an Assistant Commissioner in the Department sent Pathmark a letter which stated that the Department was reaffirming its decision to deny Pathmark's application for renewal of its exemption. Pathmark filed a notice of appeal from this letter. The Commissioner granted Pathmark's application for a stay pending the outcome of the appeal.

Pathmark argues that (1) the Department violated its own regulations in denying Pathmark's application for renewal of its exemption from the obligation to insure workers' compensation benefits; (2) the Department's finding that Pathmark no longer has the financial capacity to self-insure workers' compensation benefits was not supported by substantial evidence; and (3) the Department's failure to consider whether Pathmark could provide adequate assurance of its payment of workers' compensation benefits by increasing the amount of its surety bond for such benefits violated *N.J.S.A.* 34:15–77. We conclude that the Department acted in accordance with the governing administrative regulations in finding that Pathmark no longer has the financial capacity to self-insure and that the Department's finding was supported by substantial evidence. However, the Department's failure to consider whether Pathmark could provide adequate assurance of its payment of workers' compensation benefits by increasing the amount of its surety bond violated *N.J.S.A.* 34:15–77.

I

*N.J.S.A.* 34:15–77 authorizes the Department to grant an exemption from the obligation to obtain insurance for workers'

compensation benefits to an employer that can demonstrate adequate financial capacity to self-insure:

> Any employer desiring to carry his own liability insurance may make application to the Commissioner of Insurance showing his financial ability to pay compensation. The commissioner, if satisfied of the applicant's financial ability and the permanence of his business, shall by written order exempt the applicant from insuring the whole or any part of his compensation liability.

*N.J.S.A.* 34:15–77 also authorizes the Department to monitor the financial capacity of any employer exempted from the obligation to self-insure and to revoke that exemption if the employer no longer has adequate financial capacity to bear the risk of liability for workers' compensation benefits:

> The commissioner may from time to time require any employer exempted as herein provided to furnish further statements of financial ability and if at any time it appears to him that any such employer is no longer financially able to carry the risk of compensation liability the commissioner shall revoke his order granting exemption, whereupon the employer shall immediately insure his liability under this chapter. . . .

To implement this statutory authority, the Department adopted a regulation which requires any employer that is allowed to self-insure to obtain an annual renewal of the exemption from the obligation to insure workers' compensation liabilities. *N.J.A.C.* 11:2–33.4. This regulation also authorizes the Department to conduct a financial examination of any employer that has been exempted from the obligation to insure workers' compensation liabilities if there is reason to believe its financial condition may have deteriorated:

> If the Commissioner determines that the certificate holder's financial condition may have deteriorated, or an event occurs which is reasonably likely to cause the certificate holder's financial condition to deteriorate, he or she may conduct such further examination of the certificate holder as he or she deems necessary to ensure that the certificate holder continues to satisfy the requirements for the issuance of a certificate set forth in *N.J.S.A.* 34:15–77 and this subchapter.

> [*N.J.A.C.* 11:2–33.4(e).] [1]

---

[1] This regulation identifies four factors the Commissioner of Banking and Insurance must consider in determining whether an employer's financial condition has deteriorated:

Pathmark argues that the Department violated this regulation by conducting an examination of its financial condition and denying its application for renewal of the exemption from the obligation to obtain insurance for workers' compensation benefits, because there was no evidence Pathmark's "financial condition [had] deteriorated since the certificate [of exemption] was last renewed." Pathmark contends that it was actually in a better position to self-insure in 2002 than it had been during the period beginning in 1987, when there was a leveraged buyout of the company, and ending in 2000, when it emerged from Chapter 11 bankruptcy.

However, *N.J.A.C.* 11:2–33.4(e) does not confine the Department's review of the financial capacity of an employer that self-insures its liability for workers' compensation benefits to a comparison of its current financial condition with its financial condition at the time its exemption from the obligation to insure was last renewed. The standard set forth in the regulation is whether the employer's "financial condition may have deteriorated." The regulation does not state that this deterioration must have occurred within the last year. Moreover, if such a limitation were read into the regulation, it would undermine the Department's discharge of its statutory responsibility to verify the continuing financial capacity of any employer that self-insures workers' compensation, because the Department may have failed to become aware of an employer's deteriorating financial condition

---

i. A major loss suffered by the certificate holder over the previous year or a trend of losses over several years;

ii. A significant decrease in the certificate holder's bond rating over the previous year or a trend of decreases over the past several years;

iii. A significant increase in claims payments by the certificate holder to employees; or

iv. Major environmental litigation or asbestosis litigation to which the certificate holder has or may become subject.

Although the regulation expressly mentions only these four factors, the regulation indicates that consideration of these factors is "without limitation" to consideration of other factors. Therefore, the regulation allows the Commissioner to consider any relevant information in determining whether an employer's financial condition has deteriorated.

when it last renewed its exemption due to either the employer's failure to submit complete documentation concerning its financial condition or the Department's failure to properly review that documentation. Consequently, for the Department to fulfill its statutory responsibility to determine whether an employer that has been granted an exemption is still "financially able to carry the risk of compensation liability," *N.J.S.A.* 34:15–77, *N.J.A.C.* 11:2–33.4(e) must be construed to authorize the Department to determine whether there has been a deterioration in the employer's financial capacity at any time since it was authorized to self-insure. Therefore, we conclude that the Department's examination of Pathmark's financial condition was consistent with the governing administrative regulation.

## II

■ The reports that the Department obtained from Dun & Bradstreet provided a sufficient factual foundation for its conclusion that Pathmark no longer has the financial capacity to carry the risk of liability for workers' compensation benefits. The second of those reports stated:

> Since emerging from the Chapter 11 reorganization Pathmark has made significant strides in improving the financial condition of the company. This should be expected when "Fresh Start" accounting is used. However, the level of debt is still of concern as well as the net profit margin. Although the quarter ending May 2002 shows a net profit, the net profit margin is still in the fourth quartile as compared to similar companies.

> Pathmark's D & B Financial Stress Score of 3 viewed in conjunction with warning of Altman's Z–Score imply that a financial set back could have significant negative effects upon liquidity and profitability. In addition the D & B Credit Score Class of 5 indicates a strong possibility of delinquent payments.

> Reviewing the ratings assigned by Moody's and Standard and Poor also indicate the precarious position of Pathmark. The relatively high level of Goodwill in relation to Net Worth is an area of concern for an unsecured creditor.

> At this point the analyst must reaffirm that Pathmark is not in a position to be self-insured.

Although the report of Pathmark's financial rating expert, Houlihan, Lokey, strongly disagreed with Dun & Bradstreet's conclusion that Pathmark does not have the financial capacity to contin-

ue to self-insure its liability for workers' compensation benefits, the Department did not act arbitrarily or capriciously in accepting the analysis and conclusions set forth in the Dun & Bradstreet report.[2]

## III

If the Commissioner concludes that an employer no longer has the financial capacity to self-insure the risk of liability for workers' compensation benefits, she has discretionary authority, as an alternative to revoking the exemption, to require the employer to provide one of four forms of security to assure payment of workers' compensation:

> Whenever the commissioner is not satisfied with the financial ability and the permanence of the business of an employer exempted as herein provided, or of a new applicant for exemption, he may consider, and shall have the authority to accept, as evidence of such ability to pay compensation, (a) a guaranty by the parent corporation of such applicant that said parent corporation will discharge the applicant's liability under this chapter; (b) a separate account or reserve fund, or any deposit thereupon, maintained by an applicant to discharge his liability under this chapter; (c) a surety bond executed by an association or corporation licensed to do business in this State, provided the surety on any such surety bond undertakes to discharge the applicant's liability under this chapter; or (d) a contract of an employer with an insurance carrier covering liability for a portion of the compensation required under [N.J.S.A. 34:15–7].
>
> [N.J.S.A. 34:15–77.]

When the Department notified Pathmark that its application for renewal of its exemption from the obligation to insure workers' compensation benefits had been denied, Pathmark pointed out that it already had a $12 million surety bond to secure workers'

---

[2] At oral argument, we inquired whether Pathmark had requested an administrative hearing to challenge the analysis and conclusions set forth in the Dun & Bradstreet reports. Pathmark's counsel indicated that Pathmark had deliberately refrained from making a request for a hearing. Therefore, we have no occasion to consider whether an employer would be entitled to an administrative hearing to challenge the revocation or nonrenewal of its exemption from the obligation to obtain insurance coverage for workers' compensation benefits. See N.J.S.A. 52:14B–11; In re Fanelli, 174 N.J. 165, 172, 803 A.2d 1146 (2002); Christ Hosp. v. Dep't of Health & Senior Servs., 330 N.J.Super. 55, 61, 748 A.2d 1156 (App.Div.2000).

compensation benefits, which is one of the forms of security *N.J.S.A.* 34:15–77 authorizes the Commissioner to consider. However, the Department's November 15, 2002 letter reaffirming its decision to deny Pathmark's application for renewal of its exemption does not even mention the $12 million surety bond. Furthermore, the two Dun & Bradstreet reports upon which the Department relied in denying Pathmark's application also fail to mention the surety bond. In fact, there is no indication Dun & Bradstreet was even aware of the bond when it reached the conclusion that Pathmark no longer has the financial capacity to self-insure workers' compensation benefits.

The Department argues that because the third paragraph of *N.J.S.A.* 34:15–77 states that, as an alternative to requiring insurance coverage for workers compensation benefits, the Commissioner "may" consider requiring an employer to provide one of the forms of security set forth therein, the Commissioner has unfettered discretion to consider the appropriateness of such security or not, as she chooses. However, even though "[t]he word 'may' is ordinarily permissive ..., and the words 'must' and 'shall' are generally mandatory[,]" these words are "interchangeable whenever necessary to execute the clear intent of the Legislature." *Harvey v. Bd. of Freeholders of Essex County,* 30 *N.J.* 381, 391–92, 153 *A.*2d 10 (1959). One circumstance in which the word "may" is construed to be mandatory is where the Legislature has assigned responsibility to a public officer or agency to make a finding or perform an act that affects the public interest. As the Court noted in *Harvey:*

> Words giving power or permission to do an act which concerns the public interest, when applied to a public body or officers, are to be construed as requiring the act to be done, although the phraseology of the statute be permissive merely, not peremptory, whenever there is nothing in the act save the permissive form of the expression ... to denote that the legislature designed to lodge a discretion in the body authorized to act.
>
> [*Id.* at 392, 153 *A.*2d 10 (quoting *State v. Mayor of Newark,* 28 *N.J.L.* 491, 497–98 (Sup.Ct.1860)).]

*See also* 3 *Sutherland Statutory Construction* § 57.14 (6th ed. 2001) ("Where statutes provide for performance of acts or the

exercise of power or authority by public officers protecting private rights or in public interest, they are mandatory. This is true irrespective of whether they are phrased in imperative or permissive terms."). Consistent with this rule of construction, we conclude that *N.J.S.A.* 34:15–77 should be construed to require the Commissioner to consider whether an employer may provide assurance of the payment of workers' compensation benefits by providing one of the forms of security set forth in this provision. Furthermore, if an employer offers one of these forms of security, the Commissioner must make appropriate findings concerning the adequacy of that security to assure payment of workers' compensation benefits. *See In re Issuance of Permit by Dep't of Envtl. Prot. to Ciba–Geigy Corp.,* 120 *N.J.* 164, 171–73, 576 *A.2d* 784 (1990).

Consequently, in determining whether Pathmark's right to self-insure its workers' compensation liabilities should be continued, the Commissioner had an obligation to consider not only Pathmark's current financial condition but also the $12 million surety bond it had obtained to secure workers' compensation benefits and, if she concluded that the amount of that bond was insufficient, whether any additional bond or other security would provide adequate assurance of Pathmark's payment of those benefits. Since the Department failed to consider this alternative to denying renewal of Pathmark's exemption from the obligation to insure workers' compensation benefits, its decision cannot stand.[3]

---

[3] Although Pathmark does not raise the issue, we note that the decision denying Pathmark's application for renewal of its exemption was not made by the Commissioner, as required by both *N.J.S.A.* 34:15–77 and *N.J.A.C.* 11:2–33.4, but rather by an Assistant Commissioner. The Commissioner has not adopted a regulation purporting to delegate her decision-making authority under *N.J.S.A.* 34:15–77 to her subordinates. Moreover, we question whether such authority could be delegated even by regulation. *See Mutschler v. N.J. Dep't of Envtl. Prot.,* 337 *N.J.Super.* 1, 12–13, 766 *A.2d* 285 (App.Div.), *certif. denied,* 168 *N.J.* 292, 773 *A.2d* 1156 (2001); *Mercer Council # 4, N.J. Civil Serv. Ass'n v. Alloway,* 119 *N.J.Super.* 94, 98–101, 290 *A.2d* 300 (App.Div.), *aff'd o.b.,* 61 *N.J.* 516, 296 *A.2d* 305 (1972). Therefore, on remand, the decision whether to renew appellant's

Accordingly, we reverse the Department's decision denying Pathmark's application for renewal of its exemption from the obligation to insure its liability for workers' compensation benefits and remand the matter to the Department for reconsideration in conformity with the opinion.

exemption should be made by the Commissioner personally rather than by a subordinate.