JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.
*335 **152 In this case, the Court is tasked with determining whether the New Jersey Motor Vehicle Commission (Commission) appropriately issued fines and suspensions without holding hearings.
Commission auditors discovered alleged violations at various motor vehicle dealerships (collectively, dealers). The dealers are:
**153 Allstars Auto Group, Inc. (Allstars);
Amir Used Car, Inc. (Amir);
Amiri Mbubu Auto Sales, LLC (Mbubu);
Automotive Solution Corp. (Automotive);
Empire Auto Finance, Inc. (Empire);
Independence Auto Sales, LLC (Independence);
JMC Auto Sales, LLC (JMC); and
Old Vine Auto Dealer, LLC (Old Vine).
The dealers requested hearings after receiving notices of proposed action from the Commission. The Commission denied the requests, determining that the dealers failed to raise sufficient disputes of adjudicative facts or issues of law, and rendered a final decision imposing its proposed fines and suspensions.
The Appellate Division affirmed, agreeing that there were no adjudicative facts in dispute, and holding that there was no absolute right to a hearing before a license suspension.
We disagree and find that, if the reasons given by the dealers present a colorable dispute of facts or at least the presence of mitigating evidence, the Commission is required to provide an in-person hearing pursuant to N.J.S.A. 39:10-20. An in-person hearing must be held prior to a license suspension or revocation when the target of the enforcement action requests it. Accordingly, we reverse the judgment of the Appellate Division and remand.
I.
Because this appeal arises from a final agency determination denying a hearing, the facts below are gathered from the submissions of the parties.
Each of the dealers operates out of a separate office in the same building in Bridgeton. The dealerships are separately owned and the offices are sparse. Commission inspectors conducted audits of the offices pursuant to N.J.A.C. 13:21-15.13 on August 18 and 19, 2014. Inspectors alleged violations of various Commission regulations, including failing to keep certain business records on the premises, N.J.A.C. 13:21-15.4(g), failing to completely fill out **154 required forms for reassignments, N.J.A.C. 13:21-15.7(b)(1), failing to account for reassignments, N.J.A.C. 13:21-15.7(b)(2), failing to account for dealer plates, N.J.A.C. 13:21-15.11(a) (2014),[1] failing to produce a logbook or ledger for dealer plates, N.J.A.C. 13:21-15.11(a)(2) (2014), failing to maintain a landline phone, N.J.A.C. 13:21-15.4(h), issuing a temporary tag without a bona fide sale or lease of a vehicle, N.J.A.C. 13:21-15.9(a), failing to obtain proof of insurance before issuing a *336 temporary tag, N.J.A.C. 13:21-15.9(d) (2014), issuing a nonresident temporary tag without a bona fide sale or lease of a vehicle, N.J.A.C. 13:21-15.10(a), failing to obtain proof of insurance before issuing a nonresident temporary tag, N.J.A.C. 13:21-15.10(e), and failing to display a dealership license, N.J.A.C. 13:21-15.4. The inspectors did not allege each dealer violated every regulation; the dealers were each charged with violating three provisions except Mbubu, which was charged with five violations.
The Commission sent notices of proposed suspension to the dealers. It proposed a ten-day license suspension for all dealers except Mbubu. The Commission proposed a twenty-day suspension of Mbubu's license because of its greater number of violations. The notice informed the dealers that the Commission would also impose fines of $500 for each violation -- a $1500 civil penalty for each dealer except Mbubu and a $2500 penalty for Mbubu. The dealers would be required to pay a $200 license restoration fee.
The notice also informed the dealers of their right to request a hearing. Each dealer acted pro se and requested a hearing in writing. Each provided explanations for the alleged violations but did not deny the allegations. For example, one dealer alleged the records were temporarily with his accountant, while another claimed to have had the records on his person when traveling to and from an auction.
**155 The Commission denied the requests for hearings and issued an order of suspension/final administrative decision letter to each dealer. The Commission ruled that each dealer had "failed to identify any disputed material fact(s), legal issue(s) and/or specific mitigating circumstances to be resolved at a hearing," and interpreted the dealers' responses as admissions. The orders imposed the proposed penalties and informed each dealer when their suspensions would begin and end. The orders also informed the dealers that the orders reflected the "Final Decision of the Chairman and Chief Administrator of the Motor Vehicle Commission," and that any appeal must be made to the Appellate Division of the Superior Court.
The dealers hired one attorney to represent all of them. Counsel submitted a hearing request to the Commission on behalf of each dealer, arguing that there was a lack of factual support for the allegations and disputing each allegation. The letter claimed that the relevant records were, in fact, maintained on the premises of each dealer but provided no explanation as to why they were unavailable during the audits. One dealer submitted an amended response to the notice of proposed suspension and argued that the Commission lacked statutory authority to suspend or revoke a dealer's license without a hearing.
The Commission denied the second request for hearing for all dealers. The Chairman and Chief Administrator sent a letter to each dealer explaining that the Commission considered the previous communications from the dealers to be admissions of the violations and that counsel's new letters did not create a sufficient dispute of fact or law to entitle the dealers to a hearing. The Chairman's letter informed the dealers of their right to appeal.
The dealers moved for reconsideration of the denial of a hearing. The Commission denied the motion, concluding that the dealers had failed to demonstrate a probability of success on the merits. The dealers separately appealed the Commission's final orders to the Appellate Division.
**156 The Appellate Division panel consolidated the appeals and affirmed the Commission's imposition of suspensions and fines in an unpublished opinion. The panel *337 determined that the Commission may decide cases "without a trial-type hearing when there are no disputed adjudicative facts." Considering the dealers' concessions in their initial responses to the Commission, the panel found that the violations were supported by substantial credible evidence in the record. The Appellate Division also determined that the facts in the letter submitted by counsel lacked any support in the record and did not explain the prior statements by the dealers. The panel found that the fines challenged by the dealers were authorized by N.J.S.A. 39:10-20, and the Commission could impose fines under the statute on a case-by-case basis.
The dealers then petitioned this Court for certification, which we granted. 230 N.J. 472, 480-83, 169 A.3d 970 (2017).
II.
A.
The dealers argue that the imposition of fines and suspensions without a hearing was procedurally improper. The dealers assert that they were entitled to a hearing before the imposition of a license suspension, pursuant to N.J.S.A. 39:10-20. They posit that the authority to determine whether a matter is a contested case allows the agency head to determine whether the agency will hear the case or refer it to the Office of Administrative Law (OAL), not whether to grant a hearing at all.
According to the dealers, the Commission lacks the statutory authority to impose the fines at issue. They claim N.J.S.A. 39:10-20 allows the Commission to impose fines only for statutory violations, not for the violation of Commission regulations. The dealers assert the same reasoning applies to the imposition of the license restoration fee, and the Commission must enact a regulation to impose the fines and fees.
**157 B.
The Commission asserts that the dealers were entitled only to a "reasonable opportunity to be heard," and they were afforded that opportunity. It argues that an in-person hearing is not required. When no material facts are in dispute, the Commission continues, no contested case hearing is necessary. The Commission contends it offered the dealers the opportunity to be heard through their hearing requests, and their admissions rendered an in-person hearing unnecessary.
Addressing the issue of the fines and fees, the Commission argues that N.J.S.A. 39:10-20 authorizes it to impose a fine of up to $500 for first-time violations by a licensee. It asserts that it abided by the statute in fining the dealers $1500 each for three violations and fining Mbubu $2500 for five violations. The Commission contends that its regulations allow it to suspend licenses for rule violations and that all violations were supported by substantial, credible evidence -- the dealers' admissions.
III.
Judicial review of agency determinations is limited. Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27, 17 A.3d 801 (2011) (citing In re Herrmann, 192 N.J. 19, 27, 926 A.2d 350 (2007) ). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28, 926 A.2d 350 ). On appellate review, the court examines:
(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
(2) whether the record contains substantial evidence to support the findings *338 on which the agency based its action; and
(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[ In re Stallworth, 208 N.J. 182, 194, 26 A.3d 1059 (2011) (quoting In re Carter, 191 N.J. 474, 482, 924 A.2d 525 (2007) ).]
**158 A reviewing court "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.' " Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10, 970 A.2d 347 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513, 606 A.2d 336 (1992) ). Moreover, "[a] reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.' " Stallworth, 208 N.J. at 194, 26 A.3d 1059 (quoting Carter, 191 N.J. at 483, 924 A.2d 525 ).
However, a reviewing court is "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Dep't of Children & Families, DYFS v. T.B., 207 N.J. 294, 302, 24 A.3d 290 (2011) (alteration in original) (quoting Mayflower Sec. Co. v. Bureau of Sec., Div. of Consumer Affairs, 64 N.J. 85, 93, 312 A.2d 497 (1973) ).
IV.
A.
The Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31, "provides a road map for navigating administrative proceedings" but -- with one exception not applicable here -- "does not create a substantive right to an administrative hearing." In re Fanelli, 174 N.J. 165, 172, 803 A.2d 1146 (2002) (citing Valdes v. State Bd. of Med. Exam'rs, 205 N.J. Super. 398, 404, 501 A.2d 166 (App. Div. 1985) ). Thus, "[t]he right to an administrative hearing generally must be found outside the APA in another statute or constitutional provision." Ibid. (quoting Christ Hosp. v. Dep't of Health & Senior Servs., 330 N.J. Super. 55, 61, 748 A.2d 1156 (App. Div. 2000) ). As a threshold matter, therefore, we look to the Motor Vehicle Commission's enabling act to determine whether it creates a right to a hearing to challenge the MVC actions at issue in this case.
When it enacted the Motor Vehicle Security and Customer Service Act, L. 2003, c. 13, the Legislature established the Commission **159 as an independent entity within the Department of Transportation. See N.J.S.A. 39:2A-2, -4. The Legislature tasked the administrator and deputy administrator of the Commission with various duties including "the improvement of the safety and security of the State's motor vehicle licensing, registration, titling and inspection system." N.J.S.A. 39:2A-29. The Legislature simultaneously enacted the Motor Vehicle Certificate of Ownership Law (MVCOL), N.J.S.A. 39:10-1 to -38, "to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state." N.J.S.A. 39:10-3. The Commission is entrusted with enforcing the MVCOL, and "may make rules and regulations necessary in its judgment for the administration and enforcement thereof" that supplement, but do not conflict with, the MVCOL's provisions. N.J.S.A. 39:10-4.
To facilitate the Commission's exercise of its duties, the Legislature expressly authorized it to suspend or revoke dealer licenses, but required the opportunity for a hearing: "[t]he chief administrator shall, *339 before suspending or revoking the license, and at least 10 days prior to the date set for the hearing, notify the holder of the license, in writing, of any charges made, and shall afford him an opportunity to be heard in person or by counsel." N.J.S.A. 39:10-20 (emphasis added). The MVCOL also specifies that a post-hearing suspension may be imposed for any violation of the MVCOL itself or of the regulations adopted to implement the MVCOL. Ibid. ("The chief administrator may suspend for a period less than the unexpired term of a license or revoke a license, after hearing, for a violation of any provision of this chapter, or for a violation of the rules and regulations promulgated pursuant thereto ...." (emphasis added) ).
Commission regulations provide specific guidance regarding hearings. N.J.A.C. 13:21-15.14(a) provides that, unless circumstances not relevant here are present, "the Chief Administrator will send a Notice of Proposed Disciplinary Action" to a dealer **160 "prior to revoking, suspending, declining to renew or denying a motor vehicle dealer's license." (emphasis added). A dealer may then "request a hearing concerning the proposed disciplinary action" within twenty-five days. N.J.A.C. 13:21-15.14(b). "The hearing request must be in writing, must list all contested issues of material fact, issues of law, and mitigating circumstances that the applicant or licensee intends to demonstrate." N.J.A.C. 13:21-15.14(c).
If a hearing request is made, the regulation provides for two possible outcomes. N.J.A.C. 13:21-15.14(f) provides that, "[i]f there are no material facts in dispute or specific mitigating circumstances subject to proof or if the licensee does not respond to the Notice of Proposed Disciplinary Action within 25 days from the date of the notice, the Chief Administrator shall issue a Final Administrative Determination" that can be appealed to the Superior Court, Appellate Division. On the other hand, "[i]f the Chief Administrator finds that there exist issues of material fact or potentially mitigating circumstances, the matter will be referred for a hearing" that must accord with the APA and the Uniform Administrative Procedure Rules. N.J.A.C. 13:21-15.14(d).
Based on the foregoing, the decision to grant or deny a requested hearing hinges on the presence or absence of "issues of material fact or potentially mitigating circumstances." A "material fact" is "[a] fact that is significant or essential to the issue or matter at hand." Black's Law Dictionary 670 (9th ed. 2009). A "mitigating circumstance" is "[a] fact or situation that does not justify or excuse a wrongful act or offense but that reduces the degree of culpability and thus may reduce" the severity of the sanction imposed for a regulatory violation. See id. at 277.
If "issues of material fact or potentially mitigating circumstances are present," a hearing must be held pursuant to N.J.A.C. 13:21-15.14(d). That hearing may be conducted by the Commission itself or referred to the OAL for consideration by an Administrative Law Judge as a contested case pursuant to N.J.S.A. 52:14B-2 and -9. See generally In re Appeal of **161 Certain Sections of Unif. Admin. Procedure Rules, 90 N.J. 85, 91, 447 A.2d 151 (1982) (discussing at length the interaction between and respective responsibilities of agencies and the OAL).
Agencies can refer contested cases to the OAL. "Administrative adjudication continues to be the agency's responsibility, although it is still usually effectuated through a bifurcated process in which the hearing and decisional phases are handled separately." Ibid. According to the Office of Administrative Law Act, "the head of any agency" has "the authority ... to determine *340 whether a case is contested or to adopt, reject or modify the findings of fact and conclusions of law of any administrative law judge [ (ALJ) ]." N.J.S.A. 52:14F-7. The agency head thus "has the power to make the critical decision whether to refer a matter to an ALJ, as well as the power to make the final decision on the merits." In re Carberry, 114 N.J. 574, 584-85, 556 A.2d 314 (1989). "The point remains, however, that it is for the agency head to decide initially whether to refer the matter to the OAL." Id. at 585, 556 A.2d 314. Thus, the decision whether to refer the case to an ALJ initially before finally deciding the case remains with the agency head, but other statutory and regulatory provisions control when an in-person hearing must be held.
"The right to decide contested cases is an integral part of the administrative process." Ibid."Administrative agencies carry out their regulatory responsibilities not only through rulemaking or informal administrative action, but also through adjudication of contested cases." Ibid. (citations omitted). "Thus, the agency's decisional authority over contested cases is directly and integrally related to its regulatory function." Ibid. (quoting In re Unif. Admin. Procedural Rules, 90 N.J. at 93-94, 447 A.2d 151 ).
B.
We now apply those principles as well as the plain language of the statute to the facts of this case. We find that the plain language of N.J.S.A. 39:10-20 -- which provides that licenses may be suspended "after hearing" and specifies that "[t]he chief administrator **162 shall, before suspending or revoking a license, and at least 10 days prior to the date set for the hearing, notify the holder of the license, in writing, of any charges made, and shall afford him an opportunity to be heard in person or by counsel" (emphases added) -- mandates a hearing here. We therefore find that the Commission's action in this case "violates express or implied legislative policies," In re Stallworth, 208 N.J. at 194, 26 A.3d 1059 (quoting Carter, 191 N.J. at 482, 924 A.2d 525 ), and was "arbitrary, capricious, or unreasonable," Russo, 206 N.J. at 27, 17 A.3d 801.
The Commission points to its regulations governing hearings to support its decision to proceed without a hearing. Although the regulations provide that the Commission may issue a final decision without a hearing when "no material facts" are in dispute and no "specific mitigating circumstances" are alleged, N.J.A.C. 13:21-15.14(f), we find that provision did not authorize the Commission to forego a hearing in these circumstances.
Each of the dealers requested a hearing, and each request provided facts that the dealers intended to argue would constitute defenses to the alleged violations or would at least mitigate their severity. The pro se filings by the dealers were perhaps inarticulate in emphasizing disputed facts or law, but they clearly requested a hearing to contest the Commission action or present evidence of mitigating circumstances. Counsel's letters, although sent after the Commission's submissions deadline, remove any doubt regarding the dealers' intent to challenge the imposition of fines and suspensions. Those letters deny each alleged violation.
We hold that the Commission must provide an in-person hearing to the dealers before suspending their licenses, so that any disputed facts or questions of law may be resolved, and any mitigating circumstances presented.[2] We do not, however, *341 determine whether the Commission must conduct the hearing itself or **163 refer the matter to the OAL. Although these consolidated matters require determination of "the legal rights, duties, obligations, privileges, benefits or other legal relations" of the dealers, and thus meet the definition of a "contested case" that may be referred to the OAL, see N.J.S.A. 52:14B-2, the decision of whether to make that referral resides with the Commission, see In re Carberry, 114 N.J. at 585, 556 A.2d 314. We note that, at a minimum, in-person hearings typically consist of the opportunity to present evidence and cross-examine witnesses, see N.J.S.A. 52:14B-9 (providing in contested cases that "all parties shall be afforded an opportunity ... to respond, appear and present evidence and argument on all issues involved"), and must satisfy the requirements of due process, In re Request for Solid Waste Util. Customer Lists, 106 N.J. 508, 519, 524 A.2d 386 (1987).
Because we find that the Commission could not impose the proposed sanctions without a hearing, we address only briefly the dealers' contention that the agency lacks the authority to impose fines for violations of its regulations. The Legislature amended the MVCOL to allow the Commission to impose fines in 2007; N.J.S.A. 39:10-20 provides that "[t]he chief administrator may impose a fine not to exceed $500 for a first offense and $1,000 for any subsequent offense upon the holder of a license for a violation of any provision of [Chapter 10 of Title 39]." We find that N.J.S.A. 39:10-20 explicitly authorizes the Commission to impose such fines and that no promulgation of a fine schedule for each regulation is necessary.
V.
The judgment of the Appellate Division is reversed and the matter is remanded for further proceedings consistent with this opinion.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.

Several relevant administrative provisions have since been amended, changing, for example, section (a) to section (g). We provide the year for clarity when necessary.

It bears noting that the burden of proving the charges is on the Commission and there are no verified facts in this record as far as we can discern.