**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3350-21

MILTON PERKINS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted October 30, 2023 – Decided January 10, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. xx9049.

Nancy Ann Valentino, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Matthew C. Melton, Deputy Attorney General, on the brief).

PER CURIAM

Milton Perkins appeals from a May 19, 2022 final agency decision by the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) finding him ineligible for accidental disability retirement (ADR) benefits. We affirm.

I.

Perkins was employed as a sheriff's officer for the Cumberland County Sheriff's Department for nearly fifteen years. On December 18, 2017, Perkins injured his leg during an annual training class on the use of the monadnock expandable baton (MEB). The purpose of the class was to teach different techniques on the use of the expandable baton that included strikes, blocks, and different maneuvers.

Perkins was transported to the hospital. He was admitted to the emergency room at 8:25 p.m. and discharged at 3:15 a.m. on December 19, 2017. The emergency department records show Perkins "[r]eport[ed] right calf pain," that "started acutely yesterday while training." There was "[n]o direct trauma, but pain [was] moderate and exacerbated by weight bearing." Perkins further reported that he worked for the "sheriff['s] department and was doing hand-to-hand combat training. He had his [right] leg extended and felt a pop in his [right] calf as he was holding his attacker back." Perkins had a torn right gastrocnemius tendon and was eventually diagnosed with a blood clot in

the leg, which turned into an untreatable blockage and led to two pulmonary embolisms in the left lung.

In a department incident report prepared two days later, Officer Giacomelli stated he asked Perkins what happened. According to the report, Perkins stated that he "[thought] he hit himself in the back of the calf with the plastic training baton. He heard a 'pop' in the back of his leg when he planted his foot on the ground during the exercise."

On May 5, 2019, Perkins filed for ADR benefits, claiming he suffered a work-related injury during the MEB training. Perkins stated he was "engaged in an expandable baton training exercise" and the "baton suddenly bounced off the trainer[']s suit and came back towards me." He, however, asserted for the first time that the "baton struck [him] near [his] right knee and [he] heard a popping sound" and was "unable to place any pressure on [his] right leg after the incident." Perkins stated he had a "torn gastroc (sic) which caused [a blood clot] and other related pulmonary issues including an embolism."

At the Board's September 16, 2020 meeting, the Board denied Perkins's application for ADR benefits. While the Board determined Perkins was "totally and permanently disabled from the performance of his regular or assigned work duties per N.J.S.A. 43:15A-43 and relevant case law," it found the "incident was not undesigned and unexpected and therefore [did] not

3

qualify as a traumatic event that would entitle [him] to [accidental disability]." The Board noted that Perkins's description of the incident in his disability application was inconsistent with the emergency room records and Officer Giacomelli's incident report. The Board found the event that caused the "alleged disability was identifiable as to time and place"; "occurred during and as a result of Perkins's regular or assigned duties;" the event was "not the result of Perkins's willful negligence;" and the course of events that transpired during the incident was "indeterminate due to conflicting evidence in the record." The Board, nevertheless, determined the incident was "not undesigned and unexpected." Instead, the Board awarded him ordinary disability retirement benefits. Perkins appealed, and the matter was transferred to the Office of Administrative Law (OAL) for a hearing as a contested case.

The administrative law judge (ALJ) conducted a hearing on October 26, 2021. Officer Jesus Nieves testified that he was certified as a MEB instructor at the time of the incident. According to Nieves, this was the first time that he put on the "red suit" during the training class. He described the red suit as "a foam padded suit that cover[ed] [him] from head to toe." He explained that Perkins performed a "low strike on his leg area." When Perkins struck Nieves with the baton, it "kicked back," ricocheted off him, "and hit Perkins in his lower calf muscle area of his right leg area causing him to grunt in pain."

4

Perkins "immediately stopped" and was instructed to sit down. Nieves stated that Perkins never dropped or lost his grip on the baton after he hit the red suit. Nor had he ever seen the baton "snap back" and strike the person engaging in the exercise.

At the OAL hearing, Perkins testified that Nieves was wearing a protective suit made of "some type of foam," referred to as the "red man suit." Perkins "hit the red man suit, [] swung down, and hit [Nieves] on his . . . left leg." The baton then "bounced back immediately and hit [Perkins] on [his] right leg" when he was in the process of stepping back. He heard a "pop," and when he planted his right foot, he realized it could not bear any weight.

The Board did not present any witnesses.

On March 23, 2022, the ALJ issued an initial decision reversing the Board's denial and recommending approval of Perkins's ADR. Relying on Richardson v. Bd. of Trs. Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007), the ALJ concluded Perkins had met his burden of demonstrating that his disability was the direct result of an undesigned and unexpected traumatic event. The ALJ determined that the Board's reliance on the emergency room records and the reporting officer's incident report was improper because those records were hearsay and could not "form the basis of a decision without a residuum of other competent, non-hearsay evidence."

The ALJ found Perkins's facts were similar to Moran v. Bd. of Trs. Police & Firemen's Ret. Sys., 438 N.J. Super. 346, 348 (App. Div. 2014). The ALJ found "there was a combination of unusual circumstances and they led to [Perkins's] injury." The ALJ explained that the "[a]nnual baton training [was] not out of the ordinary[;] however, usage of a training baton in conjunction with the red suit was." The ALJ concluded "when [Perkins] hit the suit with the training baton, the baton ricocheted or bounced off the suit[,] which was an unexpected external force causing injury to [Perkins]."

On May 19, 2022, the Board rejected the ALJ's recommendation and issued a final administrative determination, reaffirming its denial of Perkins's application for ADR benefits. In rendering its decision, the Board found that the ALJ improperly dismissed the emergency room records and Giacomelli's report concerning the accident as hearsay. The Board reasoned that those records were admissible and created inconsistencies concerning the accident. The Board decided that the "use of the suit was not an 'unusual circumstance'" since both Perkins and Nieves "were familiar with the red man suit on the day of the 2017 incident." The Board likewise rejected the ALJ's finding that the suit was "designed" to absorb a blow from a baton rather than repel it, citing a lack of evidence as to its intended design. Regarding the factual inconsistencies, the Board reasoned that "under either scenario advanced by

6

[Perkins], the incident was not undesigned and unexpected and therefore does not qualify as a traumatic event."

On appeal, Perkins argues the Board erred by: (1) rejecting the ALJ's finding that the injury was the result of a traumatic event that was undesigned and unexpected; (2) rejecting the ALJ's decision and finding that Perkins's disability was not a combination of unusual circumstances; and (3) considering the hearsay evidence.

II.

Our "review of a pension board's decision in the fact sensitive matter of disability retirement benefits is limited." Rooth v. Bd. of Trs., Pub. Emps.' Ret. Sys., 472 N.J. Super. 357, 364 (App. Div. 2022) (citing Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)). An agency's action on the merits will be sustained unless that action is arbitrary, capricious, or unreasonable. In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 279 (2018).

However, an appellate court is not bound by an agency's interpretation of a statute or its determination of a strictly legal issue outside its charge. Allstars Auto Grp., Inc., 234 N.J. at 158. Nevertheless, decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme" are reviewed "under an enhanced deferential standard." E. Bay Drywall, LLC v.

7

Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). "Such deference has been specifically extended to state agencies that administer pension statutes[,]" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

On appeal, the judicial role in reviewing all administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

PERS provides for both ordinary, N.J.S.A. 43:15A-42, and accidental, N.J.S.A. 43:15A-46, disability retirement benefits. The principal difference between ordinary and accidental disability retirement "is that ordinary disability retirement need not have a work connection." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 (2008). Accidental disability retirees receive significantly greater benefits than those provided to ordinary

disability retirees. Id. at 43 (citing Richardson, 192 N.J. at 193). Thus, an applicant for disability retirement benefits must show that he or she retired "due to a total and permanent disability that renders the applicant physically or mentally incapacitated from performing normal or assigned job duties at the time the member left employment." N.J.A.C. 17:1-6.4(a); Richardson, 192 N.J. at 212.

Here, it is undisputed that Perkins had become disabled as a result of his training exercise, resulting in the award of ordinary disability retirement benefits. At issue is whether Perkins's disability was the result of a traumatic event. He argues, as he did before the ALJ, that he "suffered an injury that was undesigned and unexpected." Further, he contends the Board erred in determining his injury was undesigned and unexpected, comparing his injury to Moran. We disagree. In Moran, a firefighter injured himself kicking down a door of a burning building while attempting to rescue those inside. 438 N.J. Super. 346 at 349-50. We concluded the firefighter's injury was caused by an undesigned and unexpected event because he faced unusual circumstances, including the presence of victims inside the burning building, the "truck company's" delay, and the lack of equipment to break down the door. Id. at 354.

9

We agree with the Board that the "facts in <u>Moran</u> are inapposite to those presented here." Unlike in <u>Moran</u>, Perkins's injury occurred in a controlled, simulated training exercise. In striking Nieves with a baton, Perkins was "doing exactly what he intended to do," training in the execution of strikes and blocks with the expandable baton. Given the physical nature of the simulated training exercise, it is not extraordinary or unforeseeable for an injury to occur. We also agree with the Board that "under either scenario advanced by [] Perkins, the incident was not undesigned and unexpected." The Board appropriately applied the traumatic event standard established in <u>Richardson</u>, and its finding that there was no "combination of unusual circumstances" is supported by the record. Thus, the Board's decision to deny Perkins's application for accidental disability retirement benefits was not arbitrary, capricious, or unreasonable.

We reach a different result regarding the Board's consideration and additional findings of fact concerning the hospital discharge report and Giacomelli's incident report. Perkins argues that the Board erred in making additional findings of fact based upon hearsay evidence consisting of those reports when the ALJ accorded the evidence little to no weight. We agree.

Parties in administrative proceedings are "not . . . bound by rules of evidence," N.J.S.A. 52:14B-10(a)(1), and hearsay evidence "shall be accorded

A-3350-21

whatever weight the judge deems appropriate," N.J.A.C. 1:1-15.5(a). The residuum rule provides: "Notwithstanding the admissibility of hearsay evidence, some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness." N.J.A.C. 1:1-15.5(b).

Here, there was no residuum of legal and competent evidence in the record supporting the hearsay conclusions in the discharge records or the incident report. There was no testimony provided that gave probative support to the discharge or incident reports. The ALJ concluded that those documents "[could not] form the basis of a decision without a residuum of other competent, non-hearsay evidence." The ALJ properly exercised discretion in excluding the hearsay evidence and the Board erred in considering and making additional findings of fact based upon such evidence. Nevertheless, the Board's consideration of the hearsay did not affect its independent determination that the event was not traumatic.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3350-21