**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1445-23

STEPHANIE SIEGEL,

      Complainant-Appellant,

v.

SAHAR AZIZ, WESTFIELD
BOARD OF EDUCATION,
UNION COUNTY,

      Respondent-Respondent.

_____

Submitted March 4, 2025 – Decided July 7, 2025

Before Judges Susswein and Perez Friscia.

On appeal from the School Ethics Commission, New Jersey Department of Education, Docket No. C18-23.

Johanna E. Markind (The Deborah Project) and Jerome M. Marcus (The Deborah Project) of the Pennsylvania bar, admitted pro hac vice, attorneys for appellant (Johanna E. Markind and Jerome M. Marcus, on the briefs).

Cleary Giacobbe Alfieri Jacobs, LLC, attorneys for respondent Sahar Aziz (Matthew J. Giacobbe, of

counsel and on the brief; Janice V. Arellano, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent School Ethics Commission (Colin Klika, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Plaintiff Stephanie Siegel appeals from the December 19, 2023 final decision by the School Ethics Commission (SEC), granting defendant Sahar Aziz's motion to dismiss plaintiff's five-count complaint alleging violations of the School Ethics Act (Act), N.J.S.A. 18A:12-21 to -34. Defendant is a former member of the Westfield Board of Education. Plaintiff claimed that defendant made statements on social media that criticized Israel and Zionism. The SEC found that the statements "did not relate to the business of the [school] Board." The SEC concluded that plaintiff failed to plead sufficient credible facts to support a finding that defendant violated N.J.S.A. 18A:12-24.1(e). After reviewing the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We presume the parties are familiar with the pertinent facts and procedural history, which need only be briefly summarized. Defendant was elected and

2

sworn in as a member on the Westfield Board of Education in January 2021. Her term ended in April 2024.  Defendant is also a law professor at Rutgers Law School and her scholarship includes topics such as "Islam, Secularism [and] Human Rights, religion and race, Critical Race Theory, and Middle Eastern law and politics."

Plaintiff's allegations focus on a published letter defendant cosigned and "tweets" attributed to defendant.

On an unknown date, defendant and various professors throughout the country signed a letter titled "Palestine and Praxis:  Scholars for Palestinian Freedom" (Letter).[1]  Plaintiff alleged in her complaint that the Letter advocates, inter alia, boycotting and imposing sanctions against Israel for its treatment of Palestinians as well as supporting student activism on university campuses.

On March 15, 2023, defendant "retweeted" a social media post stating, "Israeli protestors take to streets to safeguard master-race democracy[.]  'The protestors seek to beautify an Isreal that has always been nothing more than a predatory settler-colony that grants privileges to Jewish colonists[.]'  [-]Joseph Massad" and included a link to an article from "middleeasteye.net" titled "Israeli protestors take to streets to safeguard master-race democracy."

---

[1]  Neither party provided a copy of the Letter in their appendices.

On November 30, 2022, defendant retweeted a social media post stating:

> Today, @alhaq_org and a coalition of Palestinian human rights organizations are launching a new landmark report that reclaims the current discourse on Israeli apartheid and examines its reality and origin as an integral part of Israel's settler-colonial regime.
>
> Israeli #apartheid is a tool of Zionist settler #colonialism. What does this mean & what are the origins, logic & institutions of Israeli oppression of the Palestine people as a whole? All of this & more are discussed in our new report for @alhaq_org [website link][.]

On February 27, 2023, defendant retweeted a social media message and website link from the "Center For Security, Race and Rights" which stated "'[StandWithUs'] interest isn't in student well-being but rather to slander…Galvanizing racist, anti-#Arab and anti-#Palestinian tropes is not difficult in a post-911 era. StandWithUs just had to redact every name but mine and let racism/sexism do its job[.]'" Defendant added her own text, stating "Vilifying #Arab and/or #Muslim women has become the new strategy of #Zionist groups. #Islamophobia and #Orientalism is pervasive. For more, read The #RacialMuslim @BernieSanders @AOD @IlhanMN @RepRashia[.]"

On August 23, 2022, defendant tweeted a website link to an article titled "She was fired for being publicly pro-Palestine. One year later, no one is

4

hirin[g]."  Defendant added the text:  "[a]thletic trainer was fired from Philadelphia's Agnes Irwin School for her pro-#Palestine stance."

Based on this alleged conduct, plaintiff filed an ethics complaint with the SEC against defendant on February 6, 2023, which she amended on March 30. Plaintiff requested "the [SEC] find and determine that [defendant] has violated the School Ethics Act and that she be subject to such penalty as provided by the Act."

On April 26, defendant filed a motion to dismiss in lieu of an answer.  On December 19, the SEC granted defendant's motion to dismiss.  The SEC found:

> [Defendant's] statements, while controversial and likely perceived as offensive and hurtful to members of the [d]istrict's Jewish community as well as to the Jewish community as a whole, did not relate to the business of the [b]oard and/or its operations, nor was there a nexus between the social media page and/or academic publication to her [b]oard membership. [Defendant's] social media posts were made from her personal professional social media account that did not reference her [b]oard membership.  In this circumstance, where the content of the speech lacks a connection to the [b]oard, and the posts were from a private social media account that does not mention or advertise [defendant's] position on the [b]oard, the lack of a disclaimer does not render [defendant's] conduct as being offered in an official capacity and pursuant to her official duties.  Similarly, her participation in [the Letter] stemmed from her position as a law school professor, and did not otherwise relate to her [b]oard membership.

5

This appeal followed.  To summarize the issues plaintiff raises on appeal, we reproduce verbatim the point headings from her appeal brief:

POINT I

The agency erroneously interpreted and applied N.J.S.A. . . . 18:12-24.1(e) in the present case, because:

A. The [SEC decision], distinguishing [IMO] Leonard[2] by holding that N.J.S.A. . . . 18:12-24.1(e) is not violated unless a statement unrelated to an official's legal duties is facially discriminatory and is targeted at an individual rather than a group, is a misreading of Leonard and discriminates against the Israeli and Jewish communities as targets of discrimination.

B. SEC cases interpreting N.J.S.A. . . . 18A:12-24.1(e)—on which the [SEC decision] relies— were decided after Leonard, do not follow Leonard, do not overrule Leonard, and are inconsistent with each other and with the statutory subsection they purport to apply.

1. Aziz v. Nikitinsky[3] wrongly holds that the content of speech cannot violate subsection (e) unless it relates to board business; nevertheless, the Amended Complaint satisfies this standard.

---

[2]  No. EEC C56-19, C57-19, final decision (Nov. 23, 2021).

[3]  No. EEC C56-22, final decision (Oct. 17, 2022).

A-1445-23

2. The SEC's effort in the <u>Donnerstag</u> cases[4] to impose a "nexus" requirement—imported from statutory analysis of a different subsection—on social media posts before finding a violation of N.J.S.A. . . . 18A:12-24.1(e) is inconsistent with the statute as well as with its own decisions in <u>Aziz v. Nikitinsky</u> and [<u>IMO] Leonard</u>. It is also inapplicable to [defendant's] signing of the [Letter].

3. The SEC's decision in <u>Schwartz</u>,[5] on which it also relied below and which required board action following [defendant's] biased comments, applied yet another standard to N.J.S.A. . . . 18A:12-24.1(e) violations. It too seems designed for N.J.S.A. . . . 18A:12-24.1(b) violations, but not subsection (e).

4. SEC decisions under N.J.S.A. . . . 18A:12-24.1(e) are so inconsistent that no deference is warranted. Rather, the SEC should have found that [plaintiff] had stated a claim under the facts alleged as well as [defendant's] failure to use a disclaimer.

C. The SEC erred in holding that [defendant's] offensive and distasteful comments criticizing Israel's existence and policies do not qualify as private action that may compromise the [b]oard,

---

[4]  <u>Donnerstag v. Borawski</u>, No. EEC C20-22, final decision (Aug. 22, 2023); <u>Donnerstag v. Koenig</u>, No. EEC C19-22, final decision (Aug. 22, 2023).

[5]  <u>Schwartz v. Abedrabbo</u>, No. EEC C40-21, final decision (Jan. 25, 2022). <u>See also</u> <u>Schwartz v. Abedrabbo</u>, No. A-2006-21 (App. Div. Oct. 6, 2023).

especially given the holding of In re Randolph, 101 N.J. 425 (1986), that government has the right and need to ensure its officials act in a way that does not interfere with the government's ability to provide the services it is supposed to deliver, even if that requires limiting speech rights.

In her reply brief, plaintiff further argues:

POINT I

Despite [defendant's] claims to the contrary, the applicable standard of review here is de novo.

POINT II

Contrary to [defendant's] argument, neither relationship nor nexus is required to establish a subsection (e) violation.

POINT III

Even if a relationship to the [s]chool [b]oard were required, [plaintiff's] complaint must be sustained because a relationship is clearly present here.

POINT IV

[Defendant] errs in claiming First Amendment insulates her while failing to explain how her argument is consistent with the state Supreme Court decision in In re Randolph.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. "Judicial review of agency determinations is limited." Allstars Auto

Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). An agency decision will be upheld unless "there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo, 206 N.J. at 27 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "The burden of demonstrating that the agency's action is arbitrary, capricious, or unreasonable rests upon the [party] challenging the administrative action." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

Our role in reviewing administrative action is limited to three inquires:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

It bears emphasis that we owe substantial deference to the agency's decision, even if we would have come to a different decision. In re Herrmann, 192 N.J. at 28-29. However, reviewing courts are not bound by an agency's interpretation of statute or law. Allstars Auto Grp., Inc., 234 N.J. at 158; see Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (finding that, "[a]gencies . . . have no superior ability to resolve purely legal questions, and that a court is not bound by an agency's determination of a legal issue is well established"). "Statutory and regulatory construction is a purely legal issue subject to de novo review." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009).

Turning to the substantive legal principles raised in this appeal, the Legislature created the School Ethics Act, to "'ensure and preserve public confidence . . .' in the integrity of elected and appointed members of a district board of education." N.J.S.A. 6A:28-1.1(a) (quoting N.J.S.A. 18A:12-22(b)). The Act declares that school board members must "avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated." N.J.S.A. 18A:12-22(a). The Act further states that public confidence in school board members is preserved

through "specific standards to guide [members'] conduct[,]" including the code of ethics embodied in N.J.S.A. 18A:12-24.1. Ibid.

When a complaint is filed against a school board member for violating the Act, "the burden of proof shall be on the accusing party to establish factually a violation of the code." N.J.S.A. 18A:12-29(b). The SEC "shall determine whether the conduct complained of constitutes a violation of . . . this [A]ct or the code of ethics, or whether the complaint should be dismissed." N.J.S.A. 18A:12-29(c). If the SEC determines that the board member violated the Act, they can be subject to "reprimand, censure, suspension, or removal." Ibid.

Subsection (e) of the Code of Ethics provides that: "[the school board member] will recognize that authority rests with the board of education and will make no personal promises nor take any private action that may compromise the board." N.J.S.A. 18A:12-24.1(e). A violation of subsection (e) is shown by "[f]actual evidence . . . that the [school board member] made personal promises or took action beyond the scope of [their] duties such that, by its nature, had the potential to compromise the district board of education or the board of trustees." N.J.S.A. 6A:28-6.4(a)(5).

III.

We first address plaintiff's contention that the SEC incorrectly interpreted N.J.S.A. 18A:12-24.1(e) because the SEC erroneously distinguished Leonard "by holding that [subsection (e)] is not violated unless a statement unrelated to an official's legal duties is facially discriminatory and is targeted at an individual rather than a group." Defendant responds that the SEC was correct in distinguishing Leonard because that case concerned "facially discriminatory, hateful, and violent personal attacks" while, here, defendant's statements "were never personal attacks towards individuals or groups" and instead constitute "academic discourse."

The SEC reasoned, "[t]he statements at issue in Leonard are not factually similar to the alleged statements in the present matter. Political speech criticizing Israel's policies and/or existence, while it may be offensive and distasteful, is not the same as a personal attack with calls for death." We agree with the SEC's analysis and conclusion. Leonard is distinguishable from the present matter. Defendant's posts do not contain threats to the lives of individuals like the posts in Leonard. Relatedly, defendant's Letter called for pressuring academic institutions by calling for "[b]oycott, [d]ivestment and [s]anctions of Israel" as well as "[h]ighlighting Palestinian scholarship."

12

Nothing in the Letter contain threats to individuals. We see no basis to disturb the SEC's determination.

IV.

We next address plaintiff's contention that the SEC erred in finding there was a nexus requirement and that there was an insufficient connection between defendant's conduct and her school board position. We see no basis to overturn the SEC's conclusion that defendant's Letter and social media posts "did not relate to the business of the [b]oard."

In <u>Aziz v. Nikitinsky</u>, No. EEC C56-22, the SEC provided guidance for analyzing social media-related ethics violations, stating "the [SEC] would like to explain the circumstances under which a school official may violate the Act when utilizing social media." <u>Id.</u> at 7. The SEC specified:

> Although social media activity by a school official can be regarded as action . . . , it is only when certain competent and credible factual evidence is proffered therewith that a violation can be substantiated.
>
> As a general matter, a school official does not violate the Act merely because [they] engage[] in social media activity. Instead, <u>the [SEC]'s analysis is guided by whether a reasonable member of the public could perceive that the school official is speaking in [their] official capacity or pursuant to [their] official duties . . . [which] turns, in large part, on the content of the speech</u>. If the speech in question has absolutely no

correlation or relationship to the business of the [b]oard and/or its operations and, therefore, could not possibly be regarded as a statement or position on behalf of the [b]oard (as a body), a school official will not violate the Act.

[Id. at 7-8 (citations omitted) (emphasis added).]

In August 2023, the SEC issued another final decision building on the foundation laid in Aziz. In Donnerstag v. Borawski, No. EEC C20-22,[6] the complainant alleged, inter alia, that the school board member violated N.J.S.A. 18A:12-24.1(e) in several posts on her personal Facebook. The posts included encouraging teaching staff who are part of the local union to form new unions and labor organizations, equating the treatment of unvaccinated individuals to the discrimination experienced by Jewish people, opposing the mandatory COVID vaccines and masking mandates, and referring to gender identity education as "a sick war on our children" that "we have the power to stop." Id. at 2-4. Though the Administrative Law Judge found these actions violated subsection (e), the SEC disagreed and dismissed the complaint. Id. at 2-5. Substantially relying on Aziz, the SEC determined that there was an "insufficient nexus between the [board member's social media posts] and her membership on the [b]oard, such that a reasonable member of the public would

---

[6] The companion case is Donnerstag v. Koenig, No. EEC C19-22.

14

not perceive that [the board member] is speaking pursuant to her official duties."

Id. at 4. The SEC explained:

> The posts at issue here do not mention [the school board member]'s membership on the [b]oard nor does she advertise or rely upon her [b]oard membership when publishing material on her social media page. In short, there is no factual evidence that the statements/posts on her [social media] account were made in her capacity as a member of the [b]oard, or had the appearance of being representative of, or attributable to the [b]oard. The fact that some people may be aware that [the board member] is a [b]oard member, as they know who she is, does not result in her private posts becoming in her official capacity. [The board member] may have used her [social media] page to reach constituents in her campaign, but her [social media] page did not make any reference to the [b]oard nor her membership on the same and her posts reflect the same positions on which she previously campaigned and ultimately resulted in her election onto the [b]oard.
>
> [Ibid. (emphasis added).]

The SEC added that "how school officials conduct themselves outside the scope of their duties as school officials is best addressed at the time of election. It is the public, not the [SEC], who ultimately decides which individuals in their community are best suited to serve their students." Id. at 5.

Turning to the matter before us, the SEC determined that defendant's posts, "while controversial and likely perceived as offensive and hurtful to members of the [d]istrict's Jewish community as well as to the Jewish

15

community as a whole, did not relate to the business of the [b]oard and/or its operations, nor was there a nexus between the social media page and/or [the Letter] to her [b]oard membership." The SEC emphasized that defendant's posts were made from her personal professional social media account and did not mention her board membership. Further, the Letter stemmed from defendant's position as a law professor and "did not otherwise relate to her [b]oard membership." We see no basis upon which to disturb that conclusion.

V.

Plaintiff next argues the SEC erred in dismissing her complaint because defendant, as an elected school board member, must be held to a higher standard of impartiality and fairness than the general public. While we do not dispute that school board members are held to a higher standard than members of the general public, we are unpersuaded this principle requires us to overturn the SEC's decision in this case. As the SEC stated in Aziz, "disagreement with how a school official conducts [themselves] outside the scope of [their] duties as a school official is best addressed at the time of election. It is the public, not the [SEC], who ultimately decides which individual in their community is best suited to serve their students." No. EEC C56-22 at 9.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1445-23